1  Richard H. Gordon
2  504 N. Alpine Dr.
   Beverly Hills, Ca. 90210
3  (310) 962-1267
   rhgordonesq@hotmail.com
4
5  Attorney for Dichter-Mad Family Partners, LLP
6
7                        UNITED STATES DISTRICT COURT
8                        SOUTHERN DISTRICT OF NEW YORK
9
   PAUL SHAPIRO, et. al              )
10                                   )   Case No. 1:11-cv-08331(CM)(MHD)
                                     )
11           Plaintiffs,              )
                                     )
12                                   )
                                     )
13           V.                       )
                                     )
14                                   )
15  JPMORGAN CHASE & Co. et. al,      )
                                     )
16           Defendants.              )
17
18    PLAINTIFF DICHTER-MAD FAMILY PARTNERS, LLP'S MEMORANDUM
19           OF LAW IN OPPOSITION TO MOTION TO DISMISS
20
21
            LAW OFFICES OF RICHARD H. GORDON
22          504 N. ALPINE DRIVE
            BEVERLY HILLS, CA. 90210
23          (310) 962-1267
            ATTORNEY FOR PLAINTIFF DICHTER-MAD
24          FAMILY PARTNERS, LLP
25
26
27  1
28

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | PREFATORY STATEMENT | **4-5** |
| II. | **SLUSA DOES NOT PREEMPT ALL CLASS ACTIONS. IT ONLY PREEMPTS THOSE BROUGHT IN CONNECTION WITH THE PURCHASE OR SALE OF COVERED SECURITIES** | **5** |
| III. | **THE COMPLAINT DOES NOT ALLEGE THAT THE BANK MADE UNTRUE STATEMENTS OR OMISSIONS IN CONNECTION WITH THE PURCHASE OR SALE OF A COVERED SECURITY** | **6** |
|  | A.  NO SECURITIES WERE PURCHASED OR SOLD | **6-8** |
|  | B.  EVEN IF THERE HAD BEEN SECURITIES, MADOFF'S FRAUD IS TOO REMOTE FOR SLUSA TO APPLY | **9-10** |
| III. | **CONCLUSION** | **10** |

1
2
3                           **TABLE OF AUTHORITIES**
4

| **CASES** | **PAGE(S)** |
|---|---|
| *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d. 372 (S.D.N.Y.2010) | 9, |
| *In re BLMIS* 654 F.3d 229(2011) | 7,8 |
| *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 750 F. Supp. 2d 450, 453–56 (S.D.N.Y. 2010) | 10 |

**STATUTES**

| | |
|---|---|
| 15 U.S.C. § 77p(b) | 6 |

## I.   PREFATORY STATEMENT

This case grows out of the lawsuit brought by Irving Picard (Trustee) in his capacity as Trustee for the liquidation of Bernard L. Madoff Investment Securities (Madoff) against JPMORGAN CHASE (Bank).   In his lawsuit the Trustee alleged the victims of the Madoff Ponzi scheme sustained money damages by virtue of seven (7) common law torts committed by the Bank.   The Trustee alleged the Bank knew, should have known, or consciously avoided discovering that Madoff was not engaged in lawful securities trading but, rather, was running a Ponzi Scheme.   The Bank moved to dismiss the seven common law claims; primarily on the theory that the Trustee did not have standing to make these claims because they belonged to the victims rather than Madoff.   On November 1, 2011 this Court granted the Bank's Motion and dismissed the seven common law claims stating: "…the Trustee lacks standing to pursue his common law claims against Defendants."

On November 17, 2011 Plaintiff Shapiro filed his Class Action Complaint in this matter on behalf of all Madoff victims asserting the same seven common law claims against the Bank as the Trustee had originally asserted and this Court had dismissed for lack of standing.   Pursuant to this Court's Order, Plaintiff Shapiro filed his Consolidated Amended Class Action Complaint on January 20, 2012 which sets out the identical seven common law claims on behalf of the Madoff victims against the Bank.   Plaintiff Dichter-Mad Family Partners, LLP (Dichter) is a Madoff victim.   On March 15, 2012 this Court granted Dichter's Motion to be added as a Plaintiff and for counsel to appear pro hac vice.

4

The Bank now moves to dismiss the seven common law claims on the ground that they are somehow precluded by SLUSA. Apparently, the Bank believes the Madoff victims have no remedy for the Bank's conduct. The issue of the applicability of SLUSA to the common law claims was not addressed in this Court's November 1, 2011 Decision and Order. Although counsel for Plaintiff Shapiro will address the applicability of SLUSA to the common law claims in greater depth in its Opposition to the Bank's Motion To Dismiss, Plaintiff Dichter would like to invite the Court's attention to the following points.

## II  SLUSA DOES NOT PREEMPT ALL CLASS ACTIONS. IT ONLY PREEMPTS THOSE BROUGHT IN CONNECTION WITH THE PURCHASE OR SALE OF COVERED SECURITIES.

The applicable language of SLUSA which can be found at 15 USC 77 (p) (b) reads:

"(b) **Class action limitations**

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security;"

Thus, the statute is clear: SLUSA only preempts: (i) a covered class action; (ii) based on state law; (iii) alleging untrue statements or omissions of material fact; (iv) in connection with the purchase or sale of; (v) a covered security.

5

## III   THE COMPLAINT DOES NOT ALLEGE THAT THE BANK MADE UNTRUE STATEMENTS OR OMISSIONS IN CONNECTION WITH THE PURCHASE OR SALE OF A COVERED SECURITY

The Complaint alleges the Bank was an account holder.  It is the Bank's conduct as an account holder and not as a securities dealer that is the subject of Plaintiffs' claims.  Because the claims against the Bank are not based on untrue statements or omissions in connection with the purchase or sale of covered securities, there is no SLUSA preemption. The Bank's tortious conduct, as described in the Amended Complaint, is not "in connection with" the purchase or sale of a security, but is related to its banking responsibilities to monitor its client's irregular activities and its duty not to help foster Madoff's Ponzi scheme.  Consequently, the common law claims do not fall within the range of actions preempted by SLUSA.

### A.   NO SECURITIES WERE PURCHASED OR SOLD

The Bank can not seriously contend that Madoff purchased or sold securities for Plaintiffs. Bernard Madoff has pled guilty to failing to do so and is now serving a 150 year sentence in the federal penitentiary.   In fact Bernard Madoff used Plaintiffs' funds to underwrite his lavish lifestyle and to pay money to other investors.   Since there was no purchase or sale of securities, SLUSA does not apply.

The Bank may argue that nonexistent purchases satisfy SLUSA's "in connection with" requirement because Plaintiffs intended their money to be used to purchase and sell securities. This argument essentially boils down to the proposition that Plaintiffs, by virtue of being duped

6

and defrauded by Madoff, have somehow made themselves ineligible to bring a class action against the Bank whose conduct enabled and concealed the duping and defrauding.   In other words, the Bank's wrongdoing is a shield to its liability.   To paraphrase Mr. Dickens: If this is the law then the law is an ass!!!

Fortunately, this is not the law.   The Second Circuit recently had the opportunity to consider this very question with regard to an issue arising out of the Madoff Ponzi scheme, to wit: whether those who took more money out of Madoff than they put in (net winners) were entitled to use their last statements from Madoff for purposes of calculating their losses.   The Trustee argued that the last statements were fraudulent and, despite the investors' good faith belief that they were accurate , they were of no legal effect and could not form the basis for assessing damages.   In *In re BLMIS* 654 F.3d 229(2011), the Second Circuit, in a decision written by Chief Judge Jacobs, ruled:

> "Here, the profits recorded over time on the customer statements were after-the-fact constructs that were based on stock movements that had already taken place, were rigged to reflect a steady and upward trajectory in good times and bad, and were arbitrarily and unequally distributed among customers. These facts provide powerful reasons for the Trustee's rejection of the Last Statement Method for calculating "net equity." In addition, if the Trustee had permitted the objecting claimants to recover based on their final account statements, this would have "affect[ed] the limited amount available for distribution from the customer property fund." In re Bernard L. Madoff, 424 B.R. at 133.   The inequitable consequence of such a scheme would be that those who had already withdrawn

7

cash deriving from imaginary profits in excess of their initial investment would derive additional benefit at the expense of those customers who had not withdrawn funds before the fraud was exposed. Because of these facts, the Net Investment Method better measures "net equity," as statutorily defined, than does the Last Statement Method. As the bankruptcy court reasoned, "[t]he Net Investment Method is appropriate because it relies solely on unmanipulated withdrawals and deposits and refuses to permit Madoff to arbitrarily decide who wins and who loses." In re Bernard L. Madoff, 424 B.R. at 140."

Later, in the same opinion, the Court stated:

"Use of the Last Statement Method in this case would have the absurd effect of treating fictitious and arbitrarily assigned paper profits as real and would give legal effect to Madoff's machinations. 2011 WL 3568936, at *5; *see also id.* at *11 ("assessing 'net equity' based on . . . customer statements would require the Trustee to establish each claimant's 'net equity' based on a fiction created by the perpetrator of the fraud").

**The Second Circuit's decision indicates that the fiction maintained by Madoff, or his investors expectations based on that fiction, should not be determinative of legal rights. When you add to that the gross inequity of allowing the Bank, whose conduct contributed to Plaintiffs' losses, to gain immunity or an advantage by the very fact that Plaintiffs were duped and defrauded into believing Madoff was buying and selling securities the result should be abundantly clear. There were no securities sold or purchased here, and therefore this case falls outside of SLUSA**.

8

### B. EVEN IF THERE HAD BEEN SECURITIES, MADOFF'S FRAUD IS TOO REMOTE FOR SLUSA TO APPLY

Even if the securities had been real, the securities fraud committed by Madoff does not mandate the application of SLUSA in any event. Courts of this Circuit have previously addressed this very issue. In *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d. 372 (S.D.N.Y. 2010), a group of investors in various BLMIS feeder funds brought securities fraud claims, including claims for breaches of fiduciary duties, against those funds and certain service providers. *Id.* at 404–21, 423–42. The court held that because the relevant securities fraud was committed by Madoff, not by the feeder funds, the complaint did not allege tortious conduct "inconnection with" securities fraud, so as to be preempted by SLUSA. *Id.* at 398. Similarly, in this case, the Complaint alleges that the Bank's conduct aided and abetted Madoff's fraud, breach of fiduciary duty and conversion, that the Bank knowingly participated in that fraud, that the Bank converted customer property, that the Bank was unjustly enriched, and that it must contribute as a joint tortfeasor. As the district court explained in *Anwar*, these types of claims cannot be preempted by SLUSA because the Bank's participation in the fraud was only tangentially related to securities, if they existed at all:

> "Though the Court must broadly construe SLUSA's "in connection with" phrasing, stretching SLUSA to cover this chain of investment—from Plaintiffs' initial investment in the Funds, the Funds' reinvestment with Madoff, Madoff's supposed purchases of covered securities, to Madoff's sale of those securities and purchases of Treasury bills—snaps even the most flexible rubber band."

9

*Id.* at 399; *see also Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 750 F. Supp. 2d 450, 453–56 (S.D.N.Y. 2010) (investment in hedge funds, even when those funds indisputably invest in covered securities, did not implicate SLUSA); *UBS*, 510 F. Supp. 2d at 240 ("If merely making allegations of fraud somewhere in the complaint were sufficient to bring the case within the reach of SLUSA, a class action complaint for commission of an environmental tort, that also alleged that the company fraudulently altered its books and thereby deceived shareholders, would be preempted, even if the claim against the defendant had nothing to do with securities fraud.").

### IV. CONCLUSION

For the reasons cited above the Bank's Motion To Dismiss on grounds of SLUSA preemption must be denied.

s/_____
By Richard H. Gordon
Atty for Dichter-Mad Family Partners, LLP

10