## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SHAPIRO, on behalf of himself as an individual, and on behalf of all others similarly situated, | Case No.:11-CV-8331 (CM)(MHD) |
| Plaintiff, | |
| v. | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES, LTD., | |
| Defendants. | |
| STEPHEN and LEYLA HILL, on behalf of themselves as individuals, and on behalf of all others similarly situated, | Case No. 11-CV-7961 (CM) |
| Plaintiffs, | |
| v. | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES, LTD., | |
| Defendants. | |

## <u>DECLARATION OF VINEET SEHGAL OF ALIX PARTNERS, LLP</u>

VINEET SEHGAL, hereby declares, under penalty of perjury, that the following is true and correct to the best of my knowledge, information and belief:

1.     I am a Managing Director at the New York city office of AlixPartners LLP ("AlixPartners"), located at 40 West 57th Street, 28th floor, New York, New York. I am over the age of eighteen years and I am not a party to the above-captioned action. This declaration is being submitted to update the information contained in the February 13, 2014 declaration of John Franks of AlixPartners ("Franks Declaration")[*See* ECF No. 57 in the *Shapiro* action], which is incorporated herein by reference.

2.     On January 10, 2014, the Court preliminarily approved the settlement of this class action. Pursuant to paragraph 7 of the Court's preliminary approval order [Dkt. No. 52 in the *Shapiro* action] ("Preliminary Approval Order"), AlixPartners was appointed as the Claims Administrator over the settlement of this case. I, along with other of my colleagues at AlixPartners, have personally been involved in the notice and claims administration process on behalf of AlixPartners.

3.     On December 15, 2008, the United States District Court for the Southern District of New York entered an order appointing Irving H. Picard, Esq. ("the Trustee") as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, *et seq.*, as amended ("SIPA").

4.     On December 23, 2008, an order was entered in *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (Bankr. S.D.N.Y.) ("SIPA Proceeding") authorizing and directing the Trustee to, among other things, mail a copy of: (a) the notice of the commencement of the SIPA Proceeding ("Trustee Notice"), explanatory information and claim form to each person who, from the books and records of

BLMIS, appeared to have been a customer of BLMIS; (b) the Trustee Notice, explanatory letter and claim form to creditors other than customers; and (c) the Trustee Notice, explanatory letter and Series 300 Rules to broker dealers to the addresses of such customers, creditors and broker dealers as they appeared on available books and records of BLMIS.

5.     On or around December 23, 2008, the Trustee employed AlixPartners to assist the Trustee in carrying out his duties and responsibilities in connection with the SIPA Proceeding.

6.     AlixPartners employees and Baker Hostetler LLP attorneys (Baker Hostetler is counsel to the Trustee) reviewed BLMIS' books and records and provided AlixPartners with the names, addresses and account numbers of some of the customers, creditors and broker dealers of BLMIS.

7.     AlixPartners also received the names and/or addresses of some of the customers, creditors and broker dealers of BLMIS via phone calls and voicemails left by customers on the Trustee's hotline and mail and e-mail from customers sent directly to the Securities Investor Protection Corporation ("SIPC") and BLMIS, which were forwarded to AlixPartners.

8.     A customer list (including creditors and broker dealers of BLMIS) was prepared under the direction of AlixPartners.

9.     In connection with the SIPA Proceeding, BLMIS customers have filed Proofs of Claim ("POC"), and AlixPartners has created a database with, among other things, the names and addresses of those customers and/or other entities which have filed POCs in the SIPA Proceeding ("Claims Database"). In addition, some BLMIS customers have transferred their claims to a third-party. The names and addresses of the third-party, as well as the BLMIS customer which transferred its claim, are included in an AlixPartners database of transfers ("Claim Transfer Database"). BLMIS claimants and/or third-parties with claims against BLMIS

have been advised to update AlixPartners with any changes in address or other contact information. Based on the review of BLMIS records by the Trustee and AlixPartners, as well as the various communications received by AlixPartners and the Trustee from BLMIS customers, AlixPartners believes that the Claims Database and Claim Transfer Database contain the current names and addresses of all potential members of the settlement class, as well as those who have transferred or purchased a SIPA claim.

10.  As set forth in the Franks Declaration, on January 22, 2014, utilizing the Claims Database, AlixPartners caused to be mailed, by first-class mail, to each claimant in the Claims Database who is a member of the settlement class, a "Notice of Proposed Settlement of Class Action to Direct Investors in Bernard L. Madoff Investment Securities LLC," (the "Settlement Notice"), and, with each Settlement Notice, a "Proof of Claim Form." In total, AlixPartners mailed 2778 packages containing the Settlement Notice and Proof of Claim Form.

11.  As of March 11, 2014, AlixPartners received 130 pieces of returned mail from this mailing. AlixPartners reviews returned mail for forwarding addresses. If a forwarding address is provided, then updates are made to the Claims Database and the document is forwarded on to the current address. As of March 11, 2014, nine of the returned pieces have been re-mailed. For pieces that are undeliverable, the Claims Database is updated to reflect same.

12.  In addition to the Settlement Notice and Proof of Claim form mailed to members of the settlement class, AlixPartners also mailed those documents to transferees and purchasers of potential claims. On March 3, 2014, utilizing the Claim Transfer Database, I caused to be mailed, by first-class mail, to each Transferor (the "Seller") in the Claim Transfer Database a "Notice of Procedures for Class Members that Transferred BLMIS Related Claims," a sample of

which is annexed hereto as Exhibit A (the "Transferor Notice"). There are a total of 390 unique Transferors in the Claims Transfer Database.

13.     Among the Transfer population are parties who have both purchased a claim (Transferee) and then later sold that claim (Transferor). This group is referred to as the Superseded group. On March 3, 2014, utilizing the Claim Transfer Database, I caused to be mailed, by first-class mail, to each entity in the Superseded group a Transferor Notice, "Notice to Transferees of Claims with attached Indemnification Agreement," a sample of which is annexed hereto as Exhibit B (the "Transferee Notice") and an "Indemnification Agreement". There are a total of 20 entities in the Superseded group.

14.     Lastly, on March 3, 2014, I caused to be mailed, by first-class mail, to each Transferee (the Purchaser) in the Claim Transfer Database a Transferee Notice and an Indemnification Agreement. There are a total of 51 unique Transferees in the Claims Transfer Database which have purchased 390 claims from Transferors.

15.     From the mailings made to transferors, transferees, and the Superseded Group, AlixPartners has received one piece of undeliverable mail related to a transferor as of March 11, 2014. Pursuant to the process outlined above in paragraph 11, AlixPartners reviewed this piece of returned mail for a forwarding address, but none was provided, and thus, this piece of returned mail has not been remailed. AlixPartners has updated its Claim Transfer Database to reflect same.

16.     As of March 11, 2014, AlixPartners has received 24 Proofs of Claim forms in connection with the Proofs of Claim which were sent to all members of the class. This is, of course, in addition to the proofs of claims received and processed in connection with the SIPA proceeding which settlement class members are permitted to use here. In connection with the

proofs of claim, AlixPartners has received conflicting correspondence from counsel for Farnum

Place, LLC ("Farnum") and Fairfield Sentry, Ltd. ("Sentry") concerning the ownership of certain

customer claims in this matter. These entities are presently engaged in litigation regarding such

claims and the Second Circuit has yet to reach a decision on ownership. Accordingly, Co-Lead

Counsel has notified the parties that they will hold the distribution funds at issue in escrow until

either: (i) a court of competent jurisdiction reaches a final decision as to which party is the

beneficial owner of the disputed claims; or (ii) Farnum and Sentry reach an agreement regarding

the same. A copy of the correspondence received from counsel for Farnum is attached hereto as

Exhibit C; a copy of the correspondence received from counsel for Sentry is attached as Exhibit

D; and Co-Lead Counsel's response to such letters is attached as Exhibit E.

17.     As of March 11, 2014, AlixPartners has received nine opt-out requests from

members of the settlement class. These nine accounts have been deemed to be "Net Loser"

accounts by the Trustee, and are considered Net Loser accounts pursuant to the definition of the

settlement class. In addition to the nine opt-out requests, AlixPartners has also received opt-out

requests from five "Net Winner" accounts. These accounts have been deemed to be "Net

Winner" accounts by the Trustee and are considered Net Winner accounts pursuant to the

definition of the settlement class, and therefore, the owners of these five accounts are not

members of the settlement class.

18.     In addition, Ms. Helen Chaitman who purports to represent 190 Madoff customers

filed a Notice of Intention to Opt Out of the Proposed Settlement Agreement Among the Trustee,

the Class Action Plaintiffs and JPMorgan Chase. A copy of the notice filed by Ms. Chaitman in

the United States District Court Southern District of New York is attached to this declaration as

Exhibit F. Of the 190 account holders Ms. Chaitman purports to represent, all are considered Net

Winners. However, 10 individuals who have Net Winner accounts also had Net Loser accounts. I understand that Co-Lead Counsel takes the position that even those Net Winner account holders who also have Net Loser accounts are not considered opt-outs as Co-Lead Counsel believe the opt-out request submitted by Ms. Chaitman was improper.

19.     As to those customers deemed to have Net Loser accounts, I understand that Co-Lead Counsel deems each of these opt-out requests as having been timely and validly submitted. A list of such opt-outs is attached to this declaration as Exhibit G. With regard to the nine opt-outs, eight filed a POC in the SIPA proceeding.[1] With regard to the one opt-out which did not file a POC in the SIPA proceeding, it is subject to claw back claims or litigation, and Trustee has obtained a default judgment against this entity in excess of any potential claim against the class settlement made by that opt-out.[2]

20.     As set forth in the Franks Declaration at ¶ 16, AlixPartners established, and at all times since it has been established, has maintained a toll-free number for claimants and interested parties to ask questions concerning the class action settlement. The toll-free number – (888) 369-6601 - went live on January 24, 2014, and has been operational at all times since then. As of March 11, 2014, there have been a total of 45 calls made to this number.

21.     In addition to the toll-free number established by AlixPartners, AlixPartners has also established and maintained a dedicated website – https://www.shapiro-hillclasssettlement.com – which contains links to, among other things, copies of the Notice, the POC, the settlement agreement, and other pleadings relevant to the settlement. The website went live on January 24, 2014 and remains live.

---

[1]     *See* Exhibit G.

[2]     *Id.*

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Executed this 14th day of March 2014, at New York, New York.

_____

Vineet Sehgal

Exhibit A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SHAPIRO, on behalf of himself as an individual, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES, LTD.,<br><br>                Defendants. | Case No. 11-CV-8331 (CM)(MHD) |
| STEPHEN and LEYLA HILL, on behalf of themselves as individuals, and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES, LTD.,<br><br>                Defendants. | Case No. 11-CV-7961 (CM) |

## NOTICE OF PROCEDURES FOR CLASS MEMBERS THAT TRANSFERRED BLMIS-RELATED CLAIMS

NOTICE IS HEREBY GIVEN that on January 10, 2014, the Honorable Colleen McMahon, District Judge of the United States District Court for the Southern District of New York, entered an order preliminarily approving the proposed settlement (the "Settlement") between plaintiffs Paul Shapiro, Stephen Hill, and Leyla Hill, putative representatives (the "Customer Representatives") of the proposed class of former customers of Bernard L. Madoff

Investment Securities LLC ("BLMIS") in the above-referenced consolidated class action (the "Consolidated Class Action"), Irving H. Picard, as trustee ("Trustee") for the liquidation of BLMIS under the Securities Investor Protection Act of 1970, 15 U.S.C. §§ 78aaa *et seq*., as amended ("SIPA"), and the substantively consolidated estate of Bernard L. Madoff ("Madoff"), and defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, and J.P. Morgan Securities Ltd. (collectively, "JPMorgan"). JPMorgan has agreed to pay $218 million to settle the claims in the Consolidated Class Action (the "Class Settlement Fund").

PLEASE TAKE FURTHER NOTICE that, for purposes of the Settlement only, the District Court certified the Consolidated Class Action on behalf of the following Settlement Class:

> All BLMIS customers, including their successors, transferees, or assignees, who directly had capital invested with BLMIS as of the Filing Date and thus, under the net investment method upheld by the United States Court of Appeals for the Second Circuit, had net losses ("Net Losses") as of the Filing Date ("Net Losers"), regardless of whether they filed a claim in the SIPA proceeding. The net investment method credits the amount of cash deposited by a BLMIS customer into his or her BLMIS account, less any amounts withdrawn from it. *See generally In re Bernard L. Madoff Investment Securities LLC*, 654 F.3d 883 (2d Cir. 2011). The Settlement Class includes all Net Losers, including those that did not file claims in the SIPA proceeding, and is intended to be coterminous with all BLMIS customers who have a positive net equity claim in the SIPA proceeding or who would have had a positive net equity claim in the SIPA proceeding had they filed a timely customer claim in that proceeding.

PLEASE TAKE FURTHER NOTICE that the Class Settlement Fund will be distributed on a pro rata basis based on Net Losses as of the Filing Date (*i.e.*, December 11, 2008) and distributed by the Administrator for the Class Settlement (the "Claims Administrator").

PLEASE TAKE FURTHER NOTICE that you are receiving this notice because you were a direct investor in BLMIS as of the Filing Date. According to the records maintained by the

SIPA Trustee's claims agent, you transferred your claim ("Claims Transfer") against the BLMIS estate in the SIPA proceeding pending in the United States Bankruptcy Court for the Southern District of New York, *Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC*, 08-1789 (SMB) (Bankr. S.D.N.Y.), in accordance with the Claims Trading Procedures Order entered by the Bankruptcy Court. *See* Order Granting Trustee's Motion For An Order Establishing Procedures For Assignment of Allowed Claims, *SIPC v. BLMIS*, 08-1789 (SMB), ECF No. 3057, November 10, 2010.

PLEASE TAKE NOTICE that, based on a representation signed by the transferee of your claim ("Transferee"), which indicates that the Transferee has received from you all rights to assert the claims and causes of action that were or could have been asserted against JPMorgan in connection with the Consolidated Class Action by operation of valid and enforceable purchase and sale agreements (the "Transferred Claims"), the Claims Administrator intends to make distributions from the Class Settlement Fund to the Transferee.

PLEASE TAKE FURTHER NOTICE that if you dispute that the Transferee owns the Transferred Claims and you assert that the distributions from the Class Settlement Fund are owing to you and not the Transferee, you must object by doing the following within __21 days__ of this Notice:

1. Set forth in writing the bases of your objection to the Transferee receiving the distributions from the Class Settlement Fund and include the caption of this case;

2. Submit your objection, along with any supporting documentation, to the Claims Administrator within 21 days of this Notice:

> ALIXPARTNERS LLP
> Claims Processing Center

2101 Cedar Springs Road, Suite 1100
Dallas, Texas 75201
Phone:  888-369-6601; and

3.  Provide a copy of your objection and any supporting documentation to:  (i) the

Transferee; and (ii) to each of the following:

ENTWISTLE & CAPPUCCI LLP
Andrew J. Entwistle
Robert N. Cappucci
280 Park Avenue, 26 Floor West
New York, NY  10017
(212) 894-7200

HAGENS BERMAN SHAPIRO SOBOL LLP
Reed Kathrein
715 Hearst Ave., Suite 202
Berkeley, CA 94710
(212) 752-5455

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

WACHTELL, LIPTON, ROSEN & KATZ
John F. Savarese
51 West 52nd Street
New York, New York 10019
(212) 403-1235

*Counsel for JPMorgan*

PLEASE TAKE FURTHER NOTICE that following the receipt of any objections, the

Claims Administrator will contact you to determine whether the dispute has been consensually

resolved between you and the Transferee after you have sent the Transferee a copy of your

objection.

PLEASE TAKE FURTHER NOTICE that if the dispute is not resolved between you and

the Transferee, the Class Representatives will inform the District Court that a dispute exists.  The

Claims Administrator will not make any distributions from the Class Settlement Fund to you or

4

the Transferee until the dispute is resolved by the District Court or consensually by you and the Transferee.

PLEASE TAKE FURTHER NOTICE that, if no timely objection is filed, the Transferee will receive the distributions made from the Class Settlement Fund.

PLEASE TAKE FURTHER NOTICE that any dispute between you and the Transferee regarding the Transferred Claims does not affect the validity of the Settlement.

PLEASE TAKE FURTHER NOTICE that a copy of this Notice was provided to Transferees.

Dated:  March 3, 2014

**ENTWISTLE & CAPPUCCI LLP**

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
Vincent R. Cappucci
Arthur V. Nealon
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, New York 10017
Telephone:  (212)  894-7200
Facsimile:  (212)  894-7272

**HAGENS BERMAN SOBEL SHAPIRO, LLP**

*/s/ Reed Kathrein*
Reed Kathrein
715 Hearst Ave., Suite 202
Berkeley, California 94710
Telephone: (212) 752-5455
Facsimile: (510) 725-3030

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

300312539.1

Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL SHAPIRO, on behalf of himself as an individual, and on behalf of all others similarly situated, | Case No. 11-CV-8331 (CM)(MHD) |
| Plaintiff, | |
| v. | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES, LTD., | |
| Defendants. | |
| STEPHEN and LEYLA HILL, on behalf of themselves as individuals, and on behalf of all others similarly situated, | Case No. 11-CV-7961 (CM) |
| Plaintiffs, | |
| v. | |
| JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES, LTD., | |
| Defendants. | |

**NOTICE TO TRANSFEREES OF CLAIMS WITH ATTACHED**
**INDEMNIFICATION AGREEMENT**

NOTICE IS HEREBY GIVEN that according to the records maintained by the

SIPA Trustee's claims agent in the SIPA proceeding pending in the United States

Bankruptcy Court for the Southern District of New York, *Securities Investor Protection*

*Corporation v. Bernard L. Madoff Investment Securities LLC*, 08-1789 (SMB) (Bankr.

S.D.N.Y.), one or more direct investors in BLMIS as of the Filing Date has transferred to

you its claims against the BLMIS estate.

PLEASE TAKE NOTICE that, in order to recover any distribution from the Class Settlement Fund in accordance with prospective settlement of the above-captioned consolidated class action (the "Consolidated Class Action") as preliminarily approved by Hon. Colleen McMahon by Order dated January 10, 2014, you must do the following:

1.    Sign the attached Indemnification Agreement in which you, as Transferee, warrant and represent that you have received from the Transferor, all rights to assert the claims and causes of action that were or could have been asserted against JPMorgan in connection with the Consolidated Class Action by operation of valid and enforceable purchase and sale agreement.

2.    Submit the signed Indemnification Agreement, along with a list of claims for which you believe you are entitled to receive distributions, to the Claims Administrator within 21 days of this Notice at the following address:

> ALIXPARTNERS LLP
>
> Claims Processing Center
> 2101 Cedar Springs Road, Suite 1100
> Dallas, Texas 75201
> Phone: 888-369-6601; and

3.    Provide a copy of your signed Indemnification Agreement to each of the following:

> ENTWISTLE & CAPPUCCI LLP
> Andrew J. Entwistle
> Robert N. Cappucci
> 280 Park Avenue, 26 Floor West
> New York, NY 10017
> (212) 894-7200

2

HAGENS BERMAN SHAPIRO SOBOL LLP
Reed Kathrein
715 Hearst Ave., Suite 202
Berkeley, CA 94710
(212) 752-5455

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

WACHTELL, LIPTON, ROSEN & KATZ
John F. Savarese
51 West 52nd Street
New York, New York 10019
(212) 403-1235

*Counsel for JPMorgan*

Dated: March 3, 2014

**ENTWISTLE & CAPPUCCI LLP**

*/s/ Andrew J. Entwistle*
Andrew J. Entwistle
Vincent R. Cappucci
Arthur V. Nealon
Robert N. Cappucci
280 Park Avenue, 26th Floor West
New York, New York 10017
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

**HAGENS BERMAN SOBEL SHAPIRO, LLP**

*/s/ Reed Kathrein*
Reed Kathrein
715 Hearst Ave., Suite 202
Berkeley, California 94710
Telephone: (212) 752-5455
Facsimile: (510) 725-3030

*Co-Lead Counsel for Plaintiffs and the Settlement Class*

EC.54508.1

# INDEMNIFICATION AGREEMENT

This Indemnification Agreement (this "Agreement") is made as of this [   ] day of March, 2014, among (a) [Entity] (the "Transferee"),  (b) Entwistle & Cappucci LLP ("Entwistle") and Hagens Berman Sobol Shapiro LLP ("Hagens" and together with Entwistle, the "Class Counsel") on behalf of themselves and the putative classes in the Class Actions (as defined below), (c) the Settlement Fund (as defined below) in the Class Actions; (d) AlixPartners LLP, solely in its capacity as [settlement administrator and/or claims agent] for the Class Action and the Settlement Fund ("AlixPartners"), (e) JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., JP Morgan Securities LLC, and JP Morgan Securities, Ltd., as settling parties in the Class Actions ("JPM") and (f) Irving H. Picard (the "Trustee" as trustee of the substantively consolidated estates (the "SIPA Proceeding") of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff, solely in his capacity as an intervenor in the Class Actions, and together with the Class Counsel, the Settlement Fund, Alix and JPM, the "Indemnitees"),.

## RECITALS

WHEREAS, Class Counsel represent the putative classes in the actions titled Shapiro v. JPMorgan Chase & Co., (11-8331), and  Hill v. JPMorgan Chase & Co., (11-7961) (collectively, the "Class Actions"), which are pending before the United States District Court for the Southern District of New York; and

WHEREAS, Class Counsel has reached a proposed settlement (the "Settlement") with the defendants in the Class Actions, which Class Counsel sought approval of through a motion dated January 7, 2014; and

WHEREAS, the Settlement provides for a fund (the "Settlement Fund") to be distributed to BLMIS customers with net losses as of December 11, 2008 on a pro rata basis; and

WHEREAS, the Transferee is the transferee of one or several customer claims (as set forth on Annex A) against the BLMIS estate, having purchased such customer claims from the sellers set forth on Annex A in accordance with valid and enforceable purchase and sale agreements; and

WHEREAS, the Transferee has represented that it has received from the BLMIS customers identified on Annex A all rights to assert the claims and causes of action that were or could have been asserted against JPM in connection with the Class Actions (the "Transferred Claims"); and

WHEREAS, the Transferee desires to receive a distribution from the Settlement Fund on account of the Transferred Claims;

WHEREAS, Class Counsel has agreed to make distributions from the Settlement Fund directly to the Transferee, consistent with the terms of this Agreement;

WHEREAS, in connection with this Agreement, notice will be provided to the transferors of the Transferred Claims (in the form attached hereto in Annex B) and to the transferees of the Transferred Claims (in the form attached hereto in Annex C)  stating that Class

Counsel and AlixPartners intend to make distributions from the Settlement Fund directly to the Transferee;

NOW THEREFORE for good consideration the parties do agree as follows:

AGREEMENT

1. *Indemnification.*

(a) With respect to any Transferred Claim, Transferee shall indemnify and hold harmless the Indemnitees, as well as their agents, attorneys or other professionals, against any and all losses, claims, damages or liabilities (collectively, "Loss"), to which any Indemnitee may become subject, as determined by a final order of a court of competent jurisdiction, to the extent that such Loss results from making distributions to the Transferee on account of the Transferred Claims. The Transferee further agrees to reimburse each Indemnitee, as incurred, for any reasonable, documented, and out-of-pocket legal or other expenses incurred by it in connection with investigating or defending against any action, application, suit, demand, claim or legal, administrative, arbitration or other alternative dispute resolution proceeding, hearing or investigation relating to distributions made to the Transferee with respect to the Transferred claims; provided, however, that the Transferee will not be obligated to indemnify and hold harmless any Indemnitee to the extent that a particular Loss is finally adjudicated to have resulted from the gross negligence or willful misconduct of an Indemnitee.

(b) Promptly after receipt (and in no event more than 10 days after receipt) by an Indemnitee of notice of the commencement of any action, application, suit, demand, claim or legal, administrative, arbitration or other alternative dispute resolution proceeding, hearing or investigation relating to distributions made to the Transferee with respect to the Transferred claims (each a "Proceeding"), such Indemnitee will notify the Transferee in writing of the commencement thereof. The Indemnitee shall keep the Transferee informed of all significant developments in connection with the claim, its defense and the Proceeding and shall provide any such further information regarding the same as the Transferee may reasonably request. The Indemnitee shall consult with the Transferee in connection with its defense of the claim in the Proceeding. The Indemnitee shall not settle the claim in the Proceeding without the consent of the Transferee, which shall not be unreasonably withheld.

2. *Representation by Transferee*. The Transferee warrants and represents that it has received from the BLMIS customers identified on Annex A all rights to assert the claims and causes of action that were or could have been asserted against JPM in connection with the Class Actions.

3. *Notices, etc.* All statements, requests, notices and agreements hereunder shall be in writing, and:

(a) if to the Transferee, shall be delivered or sent by mail, or email transmission to [TRANSFEREE ADDRESS] ([TRANSFEREE EMAIL]);

(b)      if to Entwistle, shall be delivered or sent by mail, or email transmission to

        ENTWISTLE & CAPPUCCI LLP
        Andrew J. Entwistle
        Robert N. Cappucci
        280 Park Avenue, 26 Floor West
        New York, NY  10017
        (212) 894-7200
        aentwistle@entwistle-law.com; and

(c)      if to Hagens shall be delivered or sent by mail, or email transmission to [

        HAGENS BERMAN SHAPIRO SOBOL LLP
        Reed Kathrein
        715 Hearst Ave., Suite 202
        Berkeley, CA 94710
        212) 752-5455
        reed@hbsslaw.com; and

(d)      if to the Alix, shall be delivered or sent by mail, or email transmission to

        ALIXPARTNERS LLP
        Claims Processing Center
        2101 Cedar Springs Road, Suite 1100
        Dallas, Texas 75201
        Phone:  888-369-6601
        Shapiro-HillClassSettlement@alixpartners.com; and

(d)      if to the JPM, shall be delivered or sent by mail, or email transmission to

        Steven Winter
        Wachtell, Lipton, Rosen & Katz
        51 West 52nd Street
        New York, NY 10019
        swinter@wlrk.com; and

(e)      if to the Trustee, shall be delivered or sent by mail, or email transmission to

        Seanna Brown
        Baker Hostetler
        45 Rockefeller Plaza
        New York, NY 10111
        sbrown@bakerlaw.com; and

Any such statements, requests, notices or agreements shall take effect at the time of receipt thereof.

4.    *Termination.*  This Agreement shall terminate, and the respective rights of the parties to assert claims hereunder shall lapse, on the date corresponding with the date one year from the date hereof.

5.    *Governing Law.* **This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York.**

6.    *Waiver of Jury Trial.*  **Each party hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Agreement or the transactions contemplated hereby.**

7.    *Waiver of Consequential Damages.* **Each party agrees that is shall not be entitled to recover, and hereby disclaims and waives any right that it may otherwise have to recover, lost profits or revenues or consequential damages or any special or indirect damages pursuant to this Agreement.**

8.    *Counterparts.*  This Agreement may be executed in one or more counterparts and, if executed in more than one counterpart, the executed counterparts shall each be deemed to be an original but all such counterparts shall together constitute one and the same instrument.

9.    *Headings.*  The headings herein are inserted for convenience of reference only and are not intended to be part of, or to affect the meaning or interpretation of, this Agreement.

If the foregoing correctly sets forth the agreement between the parties please indicate your acceptance in the space provided for that purpose below.

Very truly yours,


By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**Annex A**
Transferred Claims

[To be completed by the Transferee]

Exhibit C

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(213) 443-3602**

WRITER'S INTERNET ADDRESS
**eric winston@quinnemanuel.com**

February 27, 2014

**Via Overnight Mail**

AlixPartners LLP
Claims Processing Center
Shapiro-Hill Class Settlement
2101 Cedar Springs Road, Suite 1100
Dallas, Texas 75201



Re:     ***Notice of Participation in the Class Settlement***

Dear Sir or Madam:

We represent Farnum Place, LLC ("Farnum").  Farnum is party to that certain Trade Confirmation, dated December 13, 2010 (the "Trade Confirmation") pursuant to which Farnum acquired from Fairfield Sentry, Ltd. ("Sentry") all of Sentry's rights, title, and interest in and to certain "customer" claims (the "Sentry Claims") Sentry filed in the *In re Bernard L. Madoff Securities LLC* SIPA Proceeding (as the term defined in the "Notice of Proposed Settlement of Class Action to Direct Investors in Bernard L. Madoff Investment Securities LLC").  The Sentry Claims are reflected in Proof of Claim Nos. 011234 and 11429, which amended Proof of Claim Nos. 008037, 007898 and 11251, as described in Recital L of that Agreement dated as of May 9, 2011, between Irving H. Picard, in his capacity as Trustee for the liquidation under the Securities Investor Protection Act of 1970 of Bernard L. Madoff Investment Securities LLC, and Kenneth Krys and Joanna Lau, solely in their respective capacities as the Foreign Representatives for and Joint Liquidators of Sentry, Fairfield Sigma Limited, and Fairfield Lambda Limited.

Sentry is currently in liquidation before the High Court of Justice of the Virgin Islands, Eastern Caribbean Supreme Court (the "BVI Court") and is the subject of a case under Chapter 15 commenced in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 15 Court").  Kenneth Krys currently is the BVI Court-appointed liquidator.

On March 27, 2012, Justice Bannister of the BVI Court issued a written decision approving the Trade Confirmation. The Liquidator, however, contends that the Trade Confirmation must also be approved by the Chapter 15 Court and sought disapproval of the Trade Confirmation. On January 10, 2013, the Chapter 15 Court issued a written decision rejecting the Liquidator's application to disapprove the Trade Confirmation. The Liquidator appealed to the United States District Court for the Southern District of New York, which affirmed the Chapter 15 Court's judgment. The Liquidator has appealed to the United States Second Circuit Court of Appeals, which appeal is pending.

Even though the BVI Court's judgment is a final judgment and the Chapter 15 Court's decision has not been stayed, because he has continued to appeal, the Liquidator has refused to execute any remaining documents that finalize the transfer of the Sentry Claims. This includes executing documents that would permit Farnum to comply with the "Order Granting Trustee's Motion for an Order Establishing Procedures for the Assignment of Allowed Claims," entered on November 10, 2010 by the United States Bankruptcy Court for the Southern District of New York overseeing the BLMIS SIPA Proceeding.

Nonetheless, it is clear that Farnum is the actual beneficial owner of the Sentry Claims. Accordingly, this letter provides notice that Farnum does not request to exclude itself from the Class Settlement and intends for the Sentry Claims to participate in the Class Settlement. It is Farnum's position that, as assignee of the Sentry Claims, Farnum controls the decision whether to exclude the Sentry Claims from the Class Settlement and, because it is not requesting exclusion, Farnum is entitled to any distributions that the Class Settlement provides to the Sentry Claims. In the event that the Liquidator seeks to exclude the Sentry Claims from participating in the Class Settlement, Farnum believes the Liquidator's efforts are improper and should be rejected.

Please do not hesitate to contact us if you have any further concerns or questions.


Very truly yours,

Eric Winston

EW

cc: David Molton, Esq. (via overnight mail)

Exhibit D



DAVID J. MOLTON
direct dial: (212) 209-4822
fax: (212) 938-2822
dmolton@brownrudnick.com

Seven
Times
Square
New York
New York
10036
*tel* 212.209.4800
*fax* 212.209.4801

March 3, 2014



RECEIVED
MAR 0 4 2014
AlixPartners, LLP

## VIA OVERNIGHT MAIL

Alix Partners LLP Claims Processing Center
Shapiro-Hill Class Settlement
2101 Cedar Springs Road, Suite 1100
Dallas, Texas 75201

Eric Winston
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017

RE:    **JPMorgan Class Settlement / Fairfield Sentry Limited**

Dear Sirs:

We represent Kenneth Krys (the "Foreign Representative"), in his capacity as the liquidator and foreign representative of Fairfield Sentry Limited ("Sentry"). This letter responds to the February 27, 2014 letter from Eric Winston, counsel to Farnum Place, LLC ("Farnum").

Mr. Winston's letter purports to provide notice that Farnum does not request to exclude itself from the Class Settlement. However, as explained herein, Farnum has no right or entitlement to participate in the Class Settlement, insofar as its claimed right and entitlement are based on the Sentry Claims. Accordingly, the Claims Administrator should disregard that notice and any future notices, instructions or demands from Farnum on this matter.

<u>First</u>, Mr. Winston misrepresents that Farnum "acquired" and is the "actual beneficial owner" of Sentry's allowed customer claim (the "SIPA Claim") in the SIPA liquidation proceedings of BLMIS (the "SIPA Proceedings"). On or about December 13, 2010, Sentry entered into a Trade Confirmation with Farnum providing for an assignment of the SIPA Claim to be made pursuant to a separate instrument referred to as the "Assignment of Claim Agreement." No Assignment of Claim Agreement has ever been executed by Sentry and accordingly, no assignment has occurred. Indeed, as Mr. Winston acknowledges, there are pending, unresolved judicial proceedings that will determine whether Sentry will ever be required to assign the SIPA Claim to Farnum in the future. A copy of the Trade Confirmation and the unexecuted Assignment of Claim Agreement are enclosed.

<u>Second</u>, even if Farnum subsequently acquires the SIPA Claim, that would entitle it only to customer property distributions in the SIPA Proceedings, *see* 15 U.S.C. § 78fff-2(c)(1)(B), not to distributions in different proceedings on account on Sentry's claims against third parties, such



as distributions from the Class Settlement (which are based on BLMIS customers' common law claims against JPMorgan, not their statutory SIPA claims in the SIPA Proceedings). Farnum's position thus improperly conflates Sentry's status as a BLMIS investor holding common law claims against JPMorgan (which status makes Sentry a Settlement Class member, entitled to participate in the Class Settlement) with Sentry's statutory rights against the BLMIS estate on account of the SIPA Claim. The two are distinct. Indeed, although the Class Settlement procedures, as a matter of administrative convenience, do not require holders of SIPA claims to file separate claims to participate in the Class Settlement, the definition of the Settlement Class (as set forth in paragraph 6 of the Settlement Agreement) includes all BLMIS customers with net losses as of December 11, 2008, "*regardless of whether they filed a claim in the SIPA proceeding.*"

<u>Third</u>, Mr. Winston's letter fails to disclose that the Trade Confirmation, which sets forth terms to be included in the Assignment of Claim Agreement, provides that while the final Assignment of Claim Agreement was otherwise to conform to claims trading procedures established by the Bankruptcy Court in the SIPA Proceedings, "in no case" would the final Assignment of Claim Agreement require Sentry to "*enter, or undertake to enter, into any agreement that provides for the assignment of claims against persons or entities other than BLMIS or its estate.*" (Emphasis supplied). In turn, the unexecuted Assignment of Claim Agreement provides that "*the Assigned Rights shall not include (a) any claims Seller [Sentry] holds, or may hold, against persons or entities other than BLMIS and its estate.*" (Emphasis supplied). Thus, the Trade Confirmation and the unexecuted Assignment of Claim Agreement establish that the parties expressly agreed that Sentry's claims against the JPMorgan entities (and other third parties) would not be assigned to Farnum.

Moreover, Sentry is the debtor in pending case under Chapter 15 of the Bankruptcy Code, and in that case Sentry's liquidation proceeding in the British Virgin Islands has been recognized as a foreign main proceeding. As a consequence, Section 1520(a)(1) of the Bankruptcy Code makes the automatic stay of Section 362 applicable to, *inter alia*, all of Sentry's property within the territorial jurisdiction of the United States. Any attempt by Farnum to interfere with or exercise control over Sentry's rights to distributions from the Class Settlement fund would violate the automatic stay, *see, e.g.,* 11 U.S.C. § 362(a)(3), and therefore be void and of no force or effect. We reserve all rights, on behalf of the Foreign Representative and Sentry, against Farnum for violating the automatic stay.

Without waiver of the positions set forth above, we advise that the Foreign Representative does not intend to cause Sentry to opt out of participation in the Class Settlement.

Sincerely,

BROWN RUDNICK LLP

David J. Molton

Encl.

RECEIVED

MAR 04 2014

AlixPartners, LLP

*Execution Version*

| | |
|---|---|
| *To:* | Fairfield Sentry Limited, in liquidation, by Kenneth Krys and Joanna Lau, Joint Liquidators for and on behalf of Fairfield Sentry Limited (in liquidation) without personal liability. |
| *From:* | Farnum Place, L.L.C. or its affiliated designee |

**Trade Confirmation**

We are pleased to *confirm* the following transaction.

| | |
|---|---|
| **Trade Date:** | December 13, 2010 |
| **Seller:** | Fairfield Sentry Limited, in liquidation, by Kenneth Krys and Joanna Lau, Joint Liquidators for and on behalf of Fairfield Sentry Limited (in liquidation) without personal liability. |
| **Buyer:** | Farnum Place, L.L.C. or its affiliated designee. |
| **Debtor:** | Bernard L. Madoff Investment Securities LLC ("BLMIS"). |
| **US Bankruptcy Court:** | The United States Bankruptcy Court for the Southern District of New York. |
| **BVI Court:** | The Commercial Division of the Supreme Court of Justice, British Virgin Islands. |
| **Proceedings:** | The liquidation of the business of BLMIS under the Securities Investor Protection Act, 15 U.S.C. § 78aaa *et seq.* ("SIPA"), currently pending in the US Bankruptcy Court, under *In re Bernard L. Madoff Investment Securities LLC*, Adv. Pro. No. 08-01789 (BRL) (the "Proceedings"). |
| **Trustee:** | Irving H. Picard, as trustee for the liquidation of BLMIS. |
| **Claim:** | All Seller's rights, title and interest in and to Seller's claims against BLMIS in the Proceedings; provided, however, that the Claim shall not include any springing claims of Seller against the BLMIS estate for future indemnification. |
| **Settlement Agreement:** | Any settlement agreement that, if entered into between Seller and Trustee, shall be approved by a Final Order (as defined below) of each of the US Bankruptcy Court and the BVI Court. |
| | For purposes of this Trade Confirmation, a "Final Order" shall mean an order of either the US Bankruptcy Court or the BVI Court, as applicable, which has not been reversed, stayed, modified, amended or vacated and as to which (a) there has been a final determination or dismissal of any appeal, petition for certiorari or motion for rehearing or reconsideration that has been filed or (b) the time to appeal, seek certiorari or move for |

reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reconsideration or rehearing has been timely filed.

Notwithstanding anything herein to the contrary, Seller hereby makes no representation to, and has no duty to update, Buyer (or any entity for which Buyer is acting as agent or investment adviser) regarding the existence, status, substance or details of any settlement communications, proposals, discussions or negotiations with the Trustee.

Buyer acknowledges and agrees that (i) Seller is under no obligation to enter into a Settlement Agreement, or to enter into a Settlement Agreement which includes the Settlement Terms (as defined below), with the Trustee and (ii) Seller shall have no liability to Buyer (or any entity for which Buyer is acting as agent or investment adviser) if Seller does not enter into a Settlement Agreement, or does not enter into a Settlement Agreement which includes the Settlement Terms, with the Trustee.

**Settlement Terms:**   A Settlement Agreement that provides in substance for the following:

(i) the Claim being allowed as a valid, undisputed and non-contingent claim against BLMIS in the Proceedings in an Allowed Claim Amount (as defined below) calculated using either the Net Investment Method (as defined below) or the Last Statement Method (as defined below; provided, however, in the event the Claim is allowed using an Alternative Method (as defined below), Buyer has the option, in its sole discretion, to (a) purchase the Claim or (b) terminate this Trade Confirmation, in which event the rights and obligations of the parties hereto shall have no further force or effect;

(ii) the Claim being treated for all purposes as an unsubordinated claim of a "customer" for "net equity" (as such terms are defined in 15 U.S.C. §78lll) in the Proceedings;

(iii) the holder of the Claim not receiving proportionately less in payments or distributions in respect of, or less favorable treatment (including, the timing of payments or distributions and conversion to alternate claim calculation methodologies) for the Claim in the Proceedings than are received by holders of other customer account claims against BLMIS allowed in the Proceedings; and

(iv) the unconditional release, waiver and discharge of any and all claims, actions, defenses or liabilities (whether or not asserted) that the Trustee, BLMIS or the BLMIS estate has or may have against Seller through the date thereof ((i)-(iv) above are collectively referred to as "Settlement Terms").

**Stated Claim Amount:**   The proposed Allowed Claim Amount in a Settlement Agreement.

**Maximum Claim Amount:**   $2,000,000,000 if the Claim is calculated using the Net Investment Method or $10,539,420,000 if the Claim is calculated using the Last Statement Method.

2

| | |
|---|---|
| **Allowed Claim Amount:** | The amount of the Claim set forth in the Settlement Agreement allowed by a Final Order of the US Bankruptcy Court and approved by a Final Order of the BVI Court. Seller makes no representation or warranty that (i) the Stated Claim Amount is equal to, greater than or less than the Allowed Claim Amount or (ii) the Escrow Payment is equal to, greater than or less than the Purchase Price. |
| **Purchased Claim Amount:** | One of the following amounts: |

     (i)     if the Claim is allowed using the Net Investment Method, the Allowed Claim Amount;

     (ii)    if the Claim is allowed using the Last Statement Method, an amount equal to (a) the Allowed Claim Amount <u>divided by</u> (b) 5.26971; or

     (iii)   if the Claim is allowed using an Alternative Method, the Allowed Claim Amount.

Notwithstanding the foregoing, in no event shall the Purchased Claim Amount exceed the Maximum Claim Amount.

| | |
|---|---|
| **Net Investment Method:** | The method currently used by the Trustee for calculating claims in the Proceedings, which is, with respect to any BLMIS customer account, a calculation of the difference, over the life of such BLMIS customer account, between the total amount deposited in such BLMIS customer account and the total sum withdrawn from such BLMIS customer account. |
| **Last Statement Method:** | A method for determining claims using the market value of the securities reflected on the November 30, 2008 account statement issued by BLMIS to Seller for Seller's BLMIS customer account. |
| **Alternative Method:** | Any method of calculating claims in respect of BLMIS customer accounts in the Proceedings other than the Net Investment Method or the Last Statement Method (including, but not limited to, any method using an inflation or interest adjustment). For the avoidance of doubt, so long as either the Net Investment Method or the Last Statement Method is the prevailing method used by the Trustee for calculating customer claims in the Proceedings, Buyer will not take the position that the Claim, if allowed, was allowed under an Alternative Method. |
| **Purchase Rate:** | 32.125% (Thirty Two and One Eighth Percent) |
| **Purchase Price:** | An amount equal to the Purchase Rate multiplied by the Purchased Claim Amount; <u>provided</u>, <u>however</u>, in the event the Claim is allowed using an Alternative Method, Buyer has the option, in its sole discretion, to purchase the Claim for an amount equal to the lesser of (i) the Purchase Rate multiplied by the Stated Claim Amount or (ii) an amount equal to the Purchase Rate multiplied by the Purchased Claim Amount. |
| **Escrow Payment:** | An amount equal to the Purchase Rate multiplied by the Stated Claim Amount. |

3

| | |
|---|---|
| **Form of Purchase:** | Assignment of Claim (as defined below) between Seller and Buyer. |
| **Settlement Date:** | Settlement occurs within two (2) Business Days after a Settlement Agreement has been approved by a Final Order of each of the US Bankruptcy Court and the BVI Court and satisfaction of the other terms and conditions set forth in this Trade Confirmation. Settlement of this transaction and Buyer's ownership of the Claim shall only be effective upon Seller's confirmation of receipt of the Purchase Price. As used herein, the term "Business Day" shall mean any day on which banking institutions in both New York, NY and the British Virgin Islands are open for business. |
| **Other Terms of Trade:** | The parties agree that, if the other conditions to settlement are met, the settlement of this transaction also shall be subject to: |

(i) Entry by Seller and Trustee into a Settlement Agreement that includes the Settlement Terms; provided, however, that if Seller and Trustee enter into a Settlement Agreement that does not include one or more of the Settlement Terms, then Buyer, at its option, may elect to settle the transaction on the terms set forth herein;

(ii) Approval by the BVI Court of the terms of this Trade Confirmation and the form of Assignment of Claim;

(iii) Approval by a Final Order of each of the US Bankruptcy Court and the BVI Court of the assignment of the Claim by Seller to Buyer;

(iv) Approval by a Final Order of each of the US Bankruptcy Court and the BVI Court of the Settlement Agreement and the Settlement Terms;

(v) Execution and delivery of an assignment of claim agreement in form and substance reasonably acceptable to Buyer and Seller, containing customary provisions and further assurances for the purchase and sale of allowed customer claims owed by a debtor in bankruptcy and substantially similar to the attached Exhibit A (the "Assignment of Claim");

(vi) Seller's delivery to Buyer of any consents or lien releases as may be reasonably requested by Buyer;

(vli) Buyer's delivery to Seller of any guarantees or legal opinions that may be reasonably requested by Seller; and

(viii) Buyer's filing of the Notice of Transfer of Claim pursuant to Rule 3001(e) with the US Bankruptcy Court.

All other conditions having been met, Seller shall promptly perform, and shall act in good faith to satisfy, the conditions set forth in clauses (v) and (vii) above.

4

Subject to Seller's exercise (in Seller's sole discretion) of its fiduciary duties or obligations as court-appointed liquidator, the Assignment of Claim shall provide that after the Settlement Date, Seller will undertake and perform all actions as may be necessary to comply with the terms or conditions of the Settlement Agreement or the orders of either the US Bankruptcy Court or the BVI Court, as the case may be.

Settlement of this transaction shall be completed in accordance, and the Assignment of Claim shall comply, with any claims trading procedures established by the US Bankruptcy Court; provided, however, that in no case shall Seller enter, or undertake to enter, into any agreement that provides for the assignment of claims against persons or entities other than BLMIS or its estate.

Any and all payments or distributions made on account of the Claim (to the extent of the Purchased Claim Amount) from and after the Trade Date are for the benefit of Buyer. For the avoidance of doubt, Buyer is only entitled to receive any such payments or distributions in the event of the sale of the Claim to Buyer.

Prior to the Settlement Date, Seller shall promptly furnish to Buyer (to the extent copies of such documents are not publicly available) copies of the Settlement Agreement and Trustee's determination letter evidencing the Allowed Claim Amount.

Buyer is not assuming any obligations, liabilities or expenses in respect of or relating to the Claim or any contract, agreement or relationship between the Seller and BLMIS.

In connection with the provisions set forth herein, both Seller and Buyer agree that time is of the essence.

**Settlement and Escrow:** As soon as reasonably practicable after public disclosure of a Settlement Agreement, the parties shall enter into an escrow agreement (the "Escrow Agreement") by and among Seller, Buyer and an escrow agent ("Escrow Agent"), which shall be Scotiabank Toronto, in form and substance reasonably acceptable to the parties thereto. Buyer shall deposit the Escrow Payment into an interest bearing segregated escrow account (the "Escrow Account") maintained by the Escrow Agent.

The Escrow Payment will be released from the Escrow Account upon the earliest to occur of the following:

(A) If the Settlement Agreement is approved in the Proceedings by a Final Order of each of the US Bankruptcy Court and the BVI Court, and the terms and conditions set forth in this Trade Confirmation have been satisfied, (i) Buyer and Seller shall execute the Assignment of Claim and Notice of Transfer of Claim, and deliver a copy of the signature pages thereto to the other party, and, contemporaneous with such delivery, (ii) the parties shall instruct the Escrow Agent to release the Escrow Payment as follows:

5

(i) if the Claim is allowed, calculated using either the Net Investment Method or the Last Statement Method, in an amount that is less than the Stated Claim Amount, then the Escrow Agent (a) shall deliver to Seller the Purchase Price from the Escrow Account for the Purchased Claim Amount, and (b) shall promptly return the balance of the Escrow Account (plus interest accrued thereon in the Escrow Account) to Buyer;

(ii) if the Claim is allowed, calculated using either the Net Investment Method or the Last Statement Method, in an amount that is equal to the Stated Claim Amount, then the Escrow Agent shall deliver to Seller the Purchase Price (plus interest accrued thereon in the Escrow Account) from the Escrow Account for the Purchased Claim Amount;

(iii) if the Claim is allowed, calculated using either the Net Investment Method or the Last Statement Method, in an amount that is greater than the Stated Claim Amount, then (a) the Escrow Agent shall deliver to Seller the Purchase Price (plus interest accrued thereon in the Escrow Account) from the Escrow Account for the Purchased Claim Amount and, contemporaneously, (b) Buyer shall pay the balance of the Purchase Price to Seller. For the avoidance of doubt, nothing in this clause (iii) shall affect Buyer's option under the Section entitled "Additional Allowed Amount" below;

(iv) if the Claim is allowed calculated using an Alternative Method and the Buyer exercises Buyer's option to purchase the Claim, then the Escrow Agent (a) shall deliver to Seller the Purchase Price (plus interest accrued thereon in the Escrow Account) from the Escrow Account for the Purchased Claim Amount, to the extent applicable, and (b) shall promptly return the balance of the Escrow Account (plus interest accrued thereon in the Escrow Account), if any, to Buyer; or

(v) if the Claim is allowed calculated using an Alternative Method and the Buyer exercises Buyer's option not to purchase such Claim, the Escrow Agent shall promptly return the Escrow Payment (plus interest accrued thereon in the Escrow Account) to Buyer.

Upon Seller's receipt of the Purchase Price (i) the Assignment of Claim shall become effective, automatically and without the need for any further action by any party and (ii) Buyer shall file the Notice of Transfer of Claim with the US Bankruptcy Court.

(B) In the event the BVI Court has not approved the terms and conditions set forth herein by the date which is sixty (60) days after the Trade Date (the "BVI Court Approval Date"), then (i) the Escrow Agreement shall automatically terminate (the date of such termination, an "Escrow Return Date") and Buyer shall receive the Escrow Payment (plus interest accrued thereon in the Escrow Account) and, furthermore, (ii) Buyer shall have the right, in its sole discretion, to terminate this Trade Confirmation, in which event the rights and obligations of the parties hereto in connection with this matter shall have no further force or effect; provided, however, if Seller informs Buyer in writing within one

6

Business Day prior to the BVI Court Approval Date that Seller is actively seeking BVI Court approval, then Buyer shall agree to refrain from terminating this Trade Confirmation for a period of thirty (30) days, which period can be renewed upon mutual agreement by the Parties.

(C) If after the two year anniversary of the Trade Date, a Settlement Agreement has not been approved in the Proceedings by a Final Order of each of the US Bankruptcy Court and the BVI Court, then (i) the Escrow Agreement shall terminate (an "Escrow Return Date") and Buyer shall receive the Escrow Payment (plus interest accrued thereon in the Escrow Account), and, furthermore, (ii) this Trade Confirmation shall terminate and the rights and obligations of the parties hereto in connection with this matter shall have no further force or effect.

(D) If at any time prior to the Settlement Date, the Claim is either (i) disallowed in the Proceedings by a Final Order of the US Bankruptcy Court or (ii) impaired for any reason whatsoever, whether or not as a result of a Claim Action (as defined below), then (i) the Escrow Agreement shall automatically terminate (an "Escrow Return Date") and Buyer shall receive the Escrow Payment (plus interest accrued thereon in the Escrow Account), (ii) Buyer shall have the right, in its sole discretion, to terminate this Trade Confirmation, in which event the rights and obligations of the parties hereto in connection with this matter shall have no further force or effect and (iii) the sole and exclusive remedy of Buyer (or any entity for which it is acting as agent or investment adviser) shall be a refund of the Escrow Payment (plus interest accrued thereon in the Escrow Account); provided, however, that in such case, Buyer, at its sole option, may elect to settle the transaction on the terms set forth herein. For the avoidance of doubt, that the Allowed Claim Amount is an amount less than what was originally asserted by Seller in the Proceedings shall not constitute an event of impairment.

(E) If Seller and Trustee enter into a Settlement Agreement that does not include one or more of the Settlement Terms, then (i) the Escrow Agreement shall automatically terminate (an "Escrow Return Date") (ii) Buyer shall have the right, in its sole discretion, to terminate this Trade Confirmation, in which event the rights and obligations of the parties hereto in connection with this matter shall have no further force or effect and (iii) the sole and exclusive remedy of Buyer (or any entity for which it is acting as agent or investment adviser) shall be a refund of the Escrow Payment (plus interest accrued thereon in the Escrow Account); provided, however, that in such case, Buyer, at its sole option, may elect to settle the transaction on the terms set forth herein.

If the Settlement Date occurs after an Escrow Return Date, Buyer's payment for the Claim must be delivered to Seller within five (5) Business Days of Buyer's receipt from Seller of a written notification that the Claim has been liquidated and allowed in the Proceedings by a Final Order of the US Bankruptcy Court and approved by the BVI Court.

7

| | |
|---|---|
| **Claim Action:** | As used herein, "Claim Action" means any and all acts or decisions of Seller with respect to the Claim prior to the Settlement Date, including but not limited to (i) voting the Claim; (ii) compromising, settling or otherwise adjusting the amount, treatment or status of the Claim or (iii) prosecuting, defending or otherwise litigating the Claim or the allowance thereof. |
| **Additional Allowed Amount:** | In the event the Claim is allowed for an amount in excess of the Maximum Claim Amount, then Buyer shall have the option, at Buyer's sole discretion, to either (a) terminate this Trade Confirmation, in which event the rights and obligations of the parties hereto shall have no further force or effect or (b) purchase all of the Claim in excess of the Maximum Claim Amount (such excess amount is the "Excess Claim") for one of the following amounts: |

> (i)    if the Excess Claim is allowed using the Net Investment Method, for an amount equal to the Purchase Rate <u>multiplied by</u> such Excess Claim elected to be purchased; or
>
> (ii)    if the Excess Claim is allowed using the Last Statement Method, for an amount equal to the Purchase Rate <u>multiplied by</u> the amount of the Excess Claim elected to be purchased <u>divided by</u> 5.26971.

Buyer's payment for any Excess Claim must be delivered to Seller within five (5) Business Days of Buyer's receipt from Seller of a written notification that the Excess Claim has been liquidated and allowed in the Proceedings by a Final Order of the US Bankruptcy Court and approved by the BVI Court.

| | |
|---|---|
| **Settlement of Claim:** | Until the Settlement Date, (a) Seller shall retain (i) all rights, liabilities and obligations with respect to the defense and enforcement of the Claim and any actions relating with respect thereto and (ii) the sole and exclusive right to make, grant or exercise (or refrain from making, granting or exercising) any and all Claim Action (as defined above) and (b) Seller shall pay any and all costs and expenses (including attorneys' fees) associated with any negotiation, litigation and/or settlement relating to the Claim. |

Buyer acknowledges and agrees that it (and any entity for which it is acting as agent or investment adviser) shall be bound by any decisions of Seller to take (or refrain from taking) a Claim Action and shall have no right to direct Seller to take (or refrain from taking) any Claim Action.

Seller shall have no liability to Buyer (or any entity for which it is acting as agent or investment adviser) with respect to any Claim Action or any impact or result thereof.

| | |
|---|---|
| **Non-Reliance:** | Each of Buyer and Seller represents and warrants to the other that it (and Buyer represents and warrants to Seller that each entity for which it is acting as agent or investment adviser) (i) is a sophisticated buyer or seller (as the case may be) with respect to this transaction, (ii) has, or has access to, such information as it deems appropriate under the |

circumstances concerning, among other things, the Debtor's businesses and financial condition, and the Proceedings to make an informed decision regarding the transfer of the Claim, and (iii) has independently and without reliance on the other party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this transaction.

Each of Buyer and Seller (each, in such capacity, the "Non-Relying Party") acknowledges that the other party may possess material non-public information concerning the Claim, the Debtor and/or the Proceedings, and the Non-Relying Party further acknowledges that it has not requested to receive such information from such other party and has nevertheless determined to proceed with the transactions contemplated herein, and the other party shall have no liability to the Non-Relying Party, and the Non-Relying Party waives and releases any claims that it might have against the other party arising out of the non-disclosure of such information.

Prior to the Settlement Date and the execution and delivery of the Assignment of Claim, Seller makes no representation or warranty with respect to the validity, status, allowance, treatment or classification of the Claim nor any representation or warranty with respect to the amount, nature or timing of any distributions which may be paid in respect thereof except as expressly set forth in the Assignment of Claim.

Seller makes no representation or warranty and assumes no responsibility with respect to the financial condition, creditworthiness, properties, affairs, status or nature of BLMIS or its estate, or the performance or observance by the Trustee of any obligations under any instrument, agreement or document with the BLMIS estate.

| | |
|---|---|
| **Governing Law:** | This Trade Confirmation shall be governed by and construed in accordance with the laws of the State of New York. |
| **Confidentiality:** | The pricing terms and conditions described herein and the identity of the buyers are strictly confidential, subject to Seller's exercise (in Seller's sole discretion) of its fiduciary duties or obligations as court-appointed liquidator. |
| **Binding Effect:** | This Trade Confirmation constitutes the entire agreement between the parties and supersedes and terminates all prior agreements, communications (whether oral, written or electronic) between the parties with respect to the subject matter hereof. |

Upon execution of this Trade Confirmation, Seller shall cease any discussions with other purchasers and will decline all other bids with respect to the Claim. This Trade Confirmation shall constitute a binding agreement between the parties subject to approval of the terms and conditions hereof by the BVI Court.

Except where a sole and exclusive remedy is provided herein, Seller hereby acknowledges that money damages would be both incalculable

and an insufficient remedy for any breach of this Trade Confirmation by Seller and that such breach shall cause the Buyer irreparable harm. Accordingly, except where a sole and exclusive remedy is provided herein, Seller also agrees that in the event of any breach or threatened breach of this Trade Confirmation, Buyer, in addition to any other remedies at law or in equity that it may have, shall be entitled, without the requirement of posting a bond or other security, to equitable relief, including injunctive relief and specific performance.

**Miscellaneous:**    Subject to Seller's exercise (in Seller's sole discretion) of its fiduciary duties or obligations as court-appointed liquidator, Seller shall endeavor to obtain promptly the approval of the BVI Court of the terms and conditions of this Trade Confirmation.

The Joint Liquidators are acting solely as joint liquidators on behalf of the Seller and shall bear no personal liability in connection with the matters or transactions contemplated herein.

This Trade Confirmation may be executed in multiple counterparts and such counterparts taken together shall be deemed to constitute one and the same instrument. Transmission by telecopier, facsimile or other form of electronic transmission of an executed counterpart of this Trade Confirmation shall be deemed to constitute due and sufficient delivery of such counterpart.

*signature page follows*

Please provide the signature of a duly authorized officer or other signatory where indicated below and return this letter to the attention of by email to Patrick M. McKee, c/o Farnum Place, L.L.C., at pmm@baupost.com.

FAIRFIELD SENTRY LIMITED (IN LIQUIDATION)

By:_____
Name:  Kenneth Krys
Title:   Joint Liquidator for and on behalf of Fairfield Sentry Limited (in liquidation) without personal liability

By:_____
Name:  Joanna Lau
Title:   Joint Liquidator for and on behalf of Fairfield Sentry Limited (in liquidation) without personal liability

FARNUM PLACE, L.L.C.

By:_____
Name:   James F. Mooney
Title:    Managing Director

11

**Exhibit A**

**Assignment of Claim**

RECEIVED

MAR 0 4 2014

AlixPartners, LLP

## ASSIGNMENT OF CLAIM AGREEMENT

1.     Reference is made to the liquidation by Irving I. Picard (the "Trustee") of the business of Bernard L. Madoff Investment Securities, Inc. ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. § 78aaa, et seq. ("SIPA"), currently pending in the United States Bankruptcy Court for the Southern District of New York (the "US Bankruptcy Court"), In re Bernard L. Madoff Investment Securities LLC, Adv. Pro. No. 08-01789 (BRL) (the "Proceedings").

2.     Fairfield Sentry Limited, in liquidation ("Seller"), by and through Kenneth Krys and Joanna Lau, solely in their capacities as joint liquidators (the "Liquidators"), with offices at _____, for good and valuable consideration, the sufficiency of which is hereby acknowledged, in the amount as set forth on <u>Schedule I</u> hereto, do hereby absolutely and unconditionally sell, assign and transfer unto Farnum Place, L.L.C. or its affiliated designee, with offices at _____, and its successors and assigns ("Buyer"), all of Seller's rights, title and interests in and to Seller's <u>allowed</u> claim in the aggregate amount of $_____ (the "Claim Amount" ~~filed~~ in connection with the Proceedings (the "Claim"), including, without limitation, to the extent related thereto: (a) any and all proofs of claim filed in respect of the Claim; (b) that certain Final Order of the US Bankruptcy Court dated _____ allowing the Claim as valid, undisputed and non-contingent claims against BLMIS pursuant to a settlement agreement approved by that certain Final Order of The Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court") dated _____; (c) all agreements, account statements and other documents evidencing or relating to the Claim (the "Claim Documentation"); (d) any actions, claims and any rights to receive all payments in respect thereof, lawsuits or rights of any nature whatsoever, solely against BLMIS or its estate, arising out of or in connection with the Claim; (e) all of Seller's right to receive principal, interest, fees, expenses, damages, penalties and other amounts in respect of the Claim; (f) all other claims (including, without limitation, the Customer Claim (as defined below), all "claims" as defined in 11 U.S.C. § 101(5) and all customer claims as defined in 15 U.S.C. § 78lll(11)) solely against BLMIS, its estate, or any guarantor, together with voting and other rights and benefits arising from, under or relating to the Claim; (g) Seller's rights to receive any cash, securities, instruments, proceeds and/or other property issued in respect of, or exchanged in return for, any of the foregoing, including, without limitation, 15 U.S.C. § 78fff-2(b); and (h) all proceeds of the foregoing (the foregoing being collectively referred to herein as the "Assigned Rights"). For the avoidance of doubt, (i) the Assigned Rights shall not include <u>(a)</u> any claims Seller holds, or may hold, against persons or entities other than BLMIS and its estate <u>or (b) any springing claims of Seller against the BLMIS estate for future indemnification</u> and (ii) Buyer shall not assume any obligations or liabilities of Seller in respect of the Assigned Rights or the Claim Documentation.

3.     Seller represents and warrants that a proof of claim (the "Customer Claim") has been duly and timely filed by Seller in the Proceedings in the amount of $_____ (Claim No. ____ in accordance with the Order on Application for an Entry of an Order Approving Form and Manner of Publication and Mailing of Notices, Specifying Procedures for Filing, Determination, and Adjudication of Claims; and Providing Other Relief [Docket No. 12], a true, correct and complete copy of which is annexed hereto as <u>Exhibit A</u>. As of the date of this Assignment of Claim Agreement ("Agreement"), Buyer shall be deemed to be the owner of the Claim ~~as stated in the Customer Claim~~ for all purposes in the Proceedings. Buyer shall file the Evidence of Transfer of Claim, attached hereto as <u>Exhibit B</u> and incorporated herein by reference, with the Trustee as evidence of the terms of this sale. Each of Seller and Buyer hereby agrees to comply with any orders or procedures established by the US Bankruptcy Court with respect to the trading of claims in the Proceedings. For purposes of this Agreement, a "Final Order" shall mean an order of either the US Bankruptcy Court or the BVI Court, as applicable, which has not been reversed, stayed, modified, amended or vacated and as to which (i) there has been a final determination or dismissal of any appeal, petition for certiorari or motion for rehearing or reconsideration that has been filed or (ii) the time to appeal,

seek certiorari or move for reconsideration or rehearing has expired and no appeal, petition for certiorari or motion for reconsideration or rehearing has been timely filed.

4.      Seller further represents, warrants and covenants that:

(a) this Agreement and all exhibits attached hereto (the "Agreement Documents") have been duly authorized, executed and delivered by Seller, Seller has the requisite power and authority to execute and deliver the Agreement Documents, and Seller has delivered to Buyer true, correct and completed copies of the Agreement Documents;

(b) this Agreement constitutes the valid, legal and binding agreement of Seller, enforceable against Seller in accordance with its terms;

(c) Seller's execution, delivery, and performance of the Agreement Documents to which it is a party have not resulted and will not result in a breach or violation of any provision of Seller's organizational documents, any statute, law, writ, order, rule or regulation of any governmental authority applicable to Seller, any judgment, injunction, decree or determination of any governmental authority applicable to Seller or any contract, indenture, mortgage, loan agreement, note, lease or other agreement, document or instrument by which Seller may be a party, by which Seller may be bound or to which any of the assets of Seller is subject;

(d) no notice to, registration with, consent or approval of or any other action by any relevant governmental authority or other entity (other than the BVI Court) is or will be required for Seller to execute, deliver, and perform its obligations under the Agreement Documents (other than the filing of the transfer notice) to which Seller is a party;

(e) without characterizing the Assigned Rights as a "security" within the meaning of applicable securities laws, Seller is not selling the Assigned Rights with a view towards the sale or distribution thereof in violation of the Securities Act of 1933 (as amended, the "Securities Act");

(f) no interest in the Assigned Rights is being sold by or on behalf of an entity that is, or at any time while the Assigned Rights are held thereby will be, an "employee benefit plan" (as defined in the Employee Retirement Income Security Act of 1974, as amended);

(g) Seller is the sole beneficial owner and has good title to the Assigned Rights free and clear of any and all liens, security interests, claims, encumbrances of any kind, including, without limitation, pursuant to any factoring or other financing agreements, or regulatory or legal restriction of any kind (collectively, "Liens"), and will transfer to Buyer such good title free and clear of any Liens;

(h) Seller has not previously assigned, participated or sold, or agreed to assign, participate or sell, the Assigned Rights to any third party, in whole or in part, and Seller is the original owner of the Assigned Rights;

(i) no payment or distribution has been received by Seller or on behalf of Seller, in full or partial satisfaction of the Assigned Rights;

(j) Seller has not engaged (to the best of the Liquidators' knowledge), and Seller shall not engage, in any act, conduct or omission, or had any relationship with BLMIS, any of its affiliates or the Trustee, that will reduce or impair or otherwise adversely affect the Assigned Rights or result in Buyer receiving proportionately less in payments or distributions in respect of, or less favorable treatment (including, the timing

- 2 -

of payments or distributions and conversion to alternate claim calculation methodologies) for, such claims than are received by holders of other allowed customer account claims against BLMIS;

(k) the Assigned Rights (i) consist of claims against BLMIS in the Proceedings in an amount not less than the Claim Amount, (ii) are allowed as valid, undisputed and non-contingent claims against BLMIS by the approval of a settlement agreement by a Final Order of each of the US Bankruptcy Court and the BVI Court, (iii) shall be treated for all purposes as unsubordinated claims of a "customer" for "net equity" as such terms are defined in 15 U.S.C. §78lll and (iv) will not receive proportionately less in payments or distributions in respect thereof, or less favorable treatment (including, the timing of payments or distributions and conversion to alternate claim calculation methodologies) than the claims of holders of other customer account claims against BLMIS that have been allowed in the Proceedings;

(l) the ~~Customer~~ Claim has not been disallowed in whole or in part or otherwise has not been approved for satisfaction ~~as filed~~, and Seller has received a Notice of Trustee's Determination of the ~~Customer~~ Claim in the amount of the Claim Amount from the Trustee;

(m) neither the Assigned Rights nor any portion thereof is subject to any claim or right of setoff, reduction, recoupment, impairment, avoidance, disallowance, or subordination;

(n) Buyer is not assuming and shall not be responsible for any obligations or liabilities of Seller related to or in connection with the Assigned Rights, the Claim Documentation or the Proceedings;

(o) to the best of the Liquidators' knowledge, Seller is not, and has never been, an insider within the meaning of 11 U.S.C. Section 101(31) and not an "affiliate" of BLMIS, as such term is defined in either Section 101(2) of the Bankruptcy Code or Rule 144 of the Securities Act, as amended; and

(p) Other than the Evidence of Transfer of Claim and approval by the BVI Court and the US Bankruptcy Court of the transactions under this Agreement, no notice, consent or approval of, or any other action by, an authority or entity is or will be required for Seller to execute and deliver, and perform its obligations under this Agreement and each Evidence of Transfer of Claim.

5.      Buyer represents, warrants and covenants that:

(a) Buyer is duly organized and validly existing under the laws of its jurisdiction of organization or incorporation, in good standing under such laws and has full power and authority to execute, deliver and perform its obligations under, the Agreement Documents to which it is a party;

(b) Buyer's execution, delivery, and performance of the Agreement Documents to which it is a party have not resulted and will not result in a breach or violation of any provision of Buyer's organizational documents, any statute, law, writ, order, rule or regulation of any governmental authority applicable to Buyer, any judgment, injunction, decree or determination of any governmental authority applicable to Buyer or any contract, indenture, mortgage, loan agreement, note, lease or other agreement, document or instrument by which Buyer may be a party, by which Buyer may be bound or to which any of the assets of Buyer is subject;

(c) the Agreement Documents to which Buyer is a party have been duly and validly authorized, executed and delivered by Buyer and are the legal, valid

- 3 -

and binding obligations of Buyer, enforceable against Buyer in accordance with their respective terms, except that such enforceability may be limited by bankruptcy, insolvency, or other similar laws of general applicability affecting the enforcement of creditors' rights generally and by a court's discretion in relation to equitable remedies;

(d) no notice to, registration with, consent or approval of or any other action by any relevant governmental authority or other entity is or will be required for Buyer to execute, deliver, and perform its obligations under the Agreement Documents (other than the filing of the transfer notice) to which Buyer is a party;

(e) without characterizing the Assigned Rights as a "security" within the meaning of applicable securities laws, Buyer is not purchasing the Assigned Rights with a view towards the sale or distribution thereof in violation of the Securities Act;

(f) no broker, finder or other entity acting under the authority of Buyer or any of its affiliates is entitled to any broker's commission or other fee in connection with this transaction for which Seller could be responsible;

(g) no interest in the Assigned Rights is being acquired by or on behalf of an entity that is, or at any time while the Assigned Rights are held thereby will be, an "employee benefit plan" (as defined in the Employee Retirement Income Security Act of 1974, as amended);

(h) Buyer is an "accredited investor" and a "qualified institutional buyer", as each such term is defined under the Securities Act;

(i) No proceedings are pending against Buyer or to the best of Buyer's knowledge, threatened against Buyer before any relevant governmental authority that, in the aggregate, will materially and adversely affect any action taken or to be taken by Buyer under this Agreement; and

(j) Buyer acknowledges that it has received copies of the Claim Documentation and [list relevant documents] (the "Claim Diligence") and without in any way limiting the representations and warranties of Seller contained in this Agreement, it is assuming all risk with respect to the accuracy or sufficiency of the Claim Diligence.

6.     Both Seller and Buyer are aware that the Purchase Price (as set forth on Schedule I hereto) may be more or less than the amount ultimately distributed with respect to the Assigned Rights and will depend on the application of the definition of "net equity" to the ~~Customer~~ Claim by the Trustee in the Proceedings.     Seller and Buyer each acknowledge that the other may possess material non-public information concerning the Assigned Rights and/or the financial condition or prospects of BLMIS. Each party hereto further acknowledges that it has not requested to receive such information and has nevertheless determined to proceed with the transaction contemplated herein, and neither shall have any liability to the other party hereto arising out of the non-disclosure of such information; provided, however, that nothing in this paragraph shall limit any representation or warranty made by Seller or Buyer in this Agreement. Each of Buyer and Seller represents and warrants to the other that it (i) is a sophisticated buyer or seller (as the case may be) with respect to this transaction, (ii) has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the businesses and financial condition of BLMIS and the status of the Proceedings to make an informed decision regarding the transfer of the Claim, and (iii) has independently and without reliance on the other party, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement. Except as expressly set forth herein, Seller makes no representation or warranty and assumes no responsibility with respect to the financial condition, creditworthiness, properties, affairs, status or nature of BLMIS or its estate, or the performance or observance by the Trustee of any obligations under any instrument, agreement

or document with the BLMIS estate. Buyer acknowledges that Seller has not given Buyer any investment advice, credit information or opinion on whether the purchase of the Assigned Rights is prudent.

7.     Seller hereby irrevocably appoints Buyer as its true and lawful attorney with respect to actions relating to the Assigned Rights, and authorizes Buyer to act in Seller's name to demand, sue for, compromise and recover all such sums of money which now are, or may hereafter become due and payable for, or on account of the Assigned Rights. Seller grants unto Buyer full authority to do all things necessary to enforce the Assigned Rights and Buyer's rights thereunder pursuant to this Agreement. Seller agrees that the powers granted by this paragraph are discretionary in nature and exercisable at the sole option of Buyer. Buyer shall have no obligation to prove, defend or take affirmative action with respect to proving the validity or amount of the Assigned Rights in the Proceedings. Seller agrees to execute, acknowledge and deliver all such further certificates, instruments and other documents, and to take all such further action as may be reasonably necessary or appropriate to effect the sale of the Assigned Rights to Buyer or to defend the Assigned Rights against objection, dispute or litigation filed in respect thereof, and if for any reason, Seller (and not Buyer) is entitled to exercise any such rights after the date hereof (including, without limitation, the right to vote), Seller agrees to duly and timely exercise such rights as directed by Buyer.

8.     Each party hereto (in such capacity the "Indemnifying Party") agrees to indemnify and hold the other party hereto and its affiliates and its and their officers, directors, partners, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, judgments, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from the Indemnifying Party's breach of any of its representations, warranties, covenants or agreements as set forth herein. Notwithstanding anything to the contrary herein, Buyer acknowledges that the Liquidators shall bear no personal liability in connection with the matters or transactions contemplated herein.

9.     Seller agrees that in the event Seller shall receive any notices or distributions with respect to the Assigned Rights after the date hereof, Seller agrees to accept the same and to hold the same in trust for the benefit of Buyer. Seller agrees to deliver the same to Buyer in the same form received, within two (2) business days in the case of cash and within five (5) business days in the case of securities, with the endorsement of Seller (without recourse, representation or warranty), when necessary or appropriate. In the event Seller receives any notices in respect of the Assigned Rights, Seller shall promptly deliver the same to Buyer. In the event that all or any portion of the distributions on account of the Assigned Rights are not assignable by Seller to Buyer, then Seller grants to Buyer a 100% participation interest in the Assigned Rights or such distributions, in accordance with the provisions of this Agreement and applicable law.

10.     All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and the purchase and sale of the Assigned Rights. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns. This Agreement cannot be amended, modified, or supplemented except by an instrument in writing executed by both parties hereto. Seller hereby acknowledges that Buyer may at any time transfer or re-sell the Assigned Rights or any portion thereof to a third party, together with all of Buyer's rights, title and interest and obligations in, to and under, this Agreement. **This Agreement shall be governed by and construed in accordance with the laws of the State of New York without reference to any conflicts of law provisions. Each party hereto irrevocably and unconditionally waives its right to trial by jury and consents to the jurisdiction of the courts located in the State of New York in any action to enforce, interpret or construe any provision of this Agreement.**

11.     Seller hereby waives any notice or hearing requirements imposed under the Bankruptcy Code (including but not limited to Rule 3001 of the Bankruptcy Rules) or otherwise and stipulates that an order may be entered recognizing this Agreement as an unconditional assignment and the Buyer as the valid owner of the Assigned Rights for all purposes, including for all voting and distributions purposes with respect to the Assigned Rights.

25694603_6

12.     If either party hereto fails to make a payment or distribution to the other party hereto within the time period specified in this Agreement, the party hereto failing to make full payment of any amount when due shall, upon demand by the other party hereto, pay such amount together with interest on such amount for each day from (and including) the date when due to (but excluding) the date when actually paid at a rate per annum equal to four percent.

13.     This Agreement may be executed in multiple counterparts and all of such counterparts when taken together shall be deemed to constitute one and the same instrument.  Delivery of an executed counterpart by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

14.     Each of Seller and Buyer agrees to maintain the confidentiality of this Agreement, except to the extent required by applicable laws or regulations or by the order of any court, as may be required to obtain approval of this Agreement by the US Bankruptcy Court or the BVI Court, or as may be required to effectuate or enforce the terms of this Agreement; provided, however, that either party hereto may disclose this Agreement and the transactions contemplated hereby to its legal counsel and other professional consultants, provided that such persons and entities shall be obligated to maintain the confidentiality provisions contained herein; and provided, further, that Buyer may disclose this Agreement (but not the purchase price or purchase rate) to potential assignees.

*[signature page follows]*

**IN WITNESS WHEREOF**, the undersigned has duly executed this Agreement by its duly authorized representative dated the _____ day of _____, 201___.

**FAIRFIELD SENTRY LIMITED (IN LIQUIDATION)**


By:_____
Name: Kenneth Krys
Title:  Joint Liquidator for and on behalf of Fairfield Sentry Limited (in liquidation) without personal liability


By:_____
Name: Joanna Lau
Title:  Joint Liquidator for and on behalf of Fairfield Sentry Limited (in liquidation) without personal liability


**FARNUM PLACE, L.L.C.**

By:_____
Name:
Title:

25694603_6

**SCHEDULE I**

**Purchase Rate and Purchase Price**

A.      Claim Amount:      $[   ]

B.      Purchase Rate:          [  ]%

C.      Purchase Price (A&B):      $[   ]

**Payment and Delivery Instructions**

To Seller:

     Notices and Deliveries:

     [Seller's Name]
     [Seller's Address]
     [Attention]
     [phone number]
     [facsimile]
     [e-mail]

     Wire Transfer Instructions:

     [PLEASE PROVIDE]

To Buyer:

     Notices and Deliveries:

     Attention:
     Phone:

     Fax:

     Email:

     Wire Transfer Instructions:

## EXHIBIT A

*[insert copy of Customer Claim]*

## EXHIBIT B

## TRANSFER NOTICE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENTS SECURITIES, LLC,<br><br>Debtor. | SIPA LIQUIDATION<br><br>Case No. 08-01789<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L, MADOFF,<br><br>Debtor. |  |

## TRANSFER OF ALLOWED CLAIM

A CLAIM HAS BEEN SUBMITTED IN THIS CASE, DESIGNATED AS CLAIM NO.

_____. Transferee hereby gives evidence pursuant to certain Claims Trading Procedures

approved by Order of the above-captioned Court dated _____, 2010 [Dkt. No.____], of the

transfer of the allowed claim referenced in this evidence.

| _____ | _____ |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to
transferee should be sent:

Name and Address where notices to transferor
should be sent:

_____

_____

Name and Address where payments to
transferee should be sent (if different from
above):

_____

_____

Phone: _____
Claim No. _____
Allowed Claim Amount: _____

I declare under penalty of perjury that the information provided herein is true and correct to the best of my knowledge and belief.

By: _____     Date:_____, _____, 20___
       Transferee/Transferee's Agent

*Penalty for making a false statement: fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 & 3571.*

## Assignment

_____ ("Assignor"), for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby transfer and assign unto _____, its successors and assigns ("Assignee"), all rights, title, interests in and to Assignor's Allowed Claim in the amount of US $_____, as stated in the determination letter dated_____ from Irving H. Picard, the trustee ("Trustee") for the liquidation of the business of Bernard L. Madoff Investment v. Securities LLC, under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.*, substantively consolidated with the estate of Bernard L. Madoff in Case No. 08-01789, identified by Claim No. _____ in proceedings pending before the United States Bankruptcy Court for the Southern District of New York.

Assignor hereby certifies by this Assignment that:

i) Assignee will be recognized as the valid owner of the Allowed Claim and will receive all distributions on account of such Claim; and

ii) The Allowed Claim Amount constitutes the entire amount of the Claim and has not been reduced by any prior payment from the Trustee on account of the Allowed Claim; and

IN WITNESS WHEREOF, dated the ___ of _____, 20__.

Assignor:                                                              Assignee:

By: _____        By: _____
    (Signature of Authorized Party)                          (Signature of Authorized Party)

_____                _____
    (Assignor Name)                                                  (Assignee Name)

_____                _____
    (Print name of Authorized Party)                        (Print name of Authorized Party)

By: _____        By: _____
_____                _____
(Telephone Number)                                          (Telephone Number)

## EXHIBIT I

[Attach copy of Notice of Trustee's Determination of Claim]

## BERNARD L. MADOFF INVESTMENT SECURITIES LLC

### In Liquidation

### DECEMBER 11, 2008

### ACKNOWLEDGEMENT

### OF

### NOTICE OF TRANSFER OF CLAIM

To:  [Transferee][1]
     Address:        [        ]
     Attn:           [        ]
     Telephone:      [        ]
     Email:          [        ]

From: Irving H. Picard
      Trustee for the Liquidation of the Business of
      Bernard L. Madoff Investment Securities LLC
      c/o Baker & Hostetler LLP
      45 Rockefeller Plaza
      New York, New York 10111

              Re:     Claim No. _____

Dear Sir or Madam:

        The Trustee of the liquidation of the business of Bernard L. Madoff Investment Securities LLC under the Securities Investor Protection Act, 15 U.S.C. § 78aaa et seq. hereby acknowledges receipt of the Notice of Transfer of Claim from _____, as Transferor to _____, as Transferee, dated as of _____, 2010 in respect of the above-referenced claim. The Trustee hereby confirms that he has recorded ownership of the Claim in the books and records of the Trustee in the name and address of the Transferee.


ACKNOWLEDGED AND ACCEPTED
as of _____, 201__


_____

Irving H. Picard, Trustee for the Liquidation of the Business of
Bernard L. Madoff Investment Securities LLC


_____

[1] Transferee must complete all bracketed provisions with relevant information.

25694603_6

Exhibit E

# ENTWISTLE & CAPPUCCI

Entwistle & Cappucci LLP
280 Park Avenue
26th Floor West
New York, NY 10017

(212) 894-7200 Main
(212) 894-7272 Fax
www.entwistle-law.com

March 14, 2014

**VIA FEDERAL EXPRESS
AND ELECTRONIC MAIL**

Eric Winston, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

David J. Molton, Esq.
Brown Rudnick LLP
7 Times Square
New York, New York 10036

Re: **Fairfield Sentry's Customer Claims in *Shapiro v. JPMorgan Chase & Co.,
et al.*, No. 11-CV-8331 (CM) (MHD); *Hill v. JPMorgan Chase & Co.*, et al.,
No. 11-CV-7961 (CM)**

Dear Counsel:

We serve as Lead Counsel on behalf of the class of former customers of Bernard L. Madoff Investment Securities in the above-captioned consolidated class action. We write in connection with the dispute between Farnum Place, LLC ("Farnum") and Fairfield Sentry, Ltd. ("Sentry") as to the ownership of certain customer claims (the "Disputed Claims") in the actions.

We have been informed by the Claims Administrator, AlixPartners LLP, that Farnum and Sentry disagree as to which of the two entities is entitled to the benefit from these claims in the context of the recent settlement of these actions (the "Class Action Settlement"). We understand that the issue of the ownership of the Disputed Claims is currently before the United States Court of Appeals for the Second Circuit, which may decide the dispute or return it to the lower court for further proceedings. We also understand that neither Farnum nor Sentry intends to opt out of participation in the Class Action Settlement. Accordingly, we have determined to place in escrow the distribution funds to which the Disputed Claims are entitled until either: 1) a court of competent jurisdiction reaches a final decision as to which party is the beneficial owner of the Disputed Claims; or 2) Farnum and Sentry reach an agreement regarding the same.

To the extent you have any further questions regarding the status of this claim, please do not hesitate to contact me.

Very truly yours,

Andrew J. Entwistle

cc: AlixPartners LLP

EC.55128.1

Exhibit F

BECKER & POLIAKOFF LLP
Helen Davis Chaitman (4266)
45 Broadway
New York, New York 10006
(212) 599-3322
HCHAITMAN@BPLEGAL.COM
*Attorneys for the customers listed on Exhibit A*
*and on behalf of the class of all "net winners"*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL SHAPIRO, on behalf of himself as individuals, and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          *v.*<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES LTD.,<br><br>                    Defendants. | Case No. 11-CV-8331 (CM)(MHD) |
| STEPHEN and LEYLA HILL, on behalf of themselves as individuals, and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>          *v.*<br><br>JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, N.A., J.P. MORGAN SECURITIES LLC, and J.P. MORGAN SECURITIES LTD.,<br><br>                    Defendants. | Civ. No. 11-CV-7961 (CM) |

**NOTICE OF INTENTION TO OPT OUT OF THE PROPOSED SETTLEMENT AGREEMENT AMONG THE TRUSTEE, THE CLASS ACTION PLAINTIFFS AND JPMORGAN CHASE**

## **INTRODUCTION**

The customers of Bernard L. Madoff Investment Securities LLC ("BLMIS") listed in **Exhibit A** hereto (the "Customers"), as well as the class of "net winners" that they represent, by their undersigned counsel, submit this notice of intention to opt out of the proposed settlement agreement (the "Settlement Agreement") between Irving H. Picard (the "Trustee"), as Trustee in the proceeding for the liquidation of BLMIS, the Class Action Plaintiffs, and JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Securities LLC, J.P. Morgan Securities LTD (collectively, "JPMC"). The Customers also object to the definition of the class as set forth in the Settlement Agreement because it is inconsistent with the class as defined in the Hill Class Action, the Shapiro Class Action, and the Consolidated Actions. [1]

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On December 2, 2010, the Trustee filed a complaint against JPMC seeking to avoid and recover approximately $435 million of transfers and other payments received by JPMC prior to BLMIS' collapse (the "Avoidance Claims"). *Picard v. JPMorgan Chase & Co, et al.*, 10-4932 (BRL) (the "JPMC Adversary Proceeding"). The Trustee also asserted common law claims against JPMC, including, *inter alia*, aiding and abetting fraud, aiding and abetting breach of fiduciary duty and conversion (the "Trustee's Common Law Claims"). On May 23, 2011, the bankruptcy reference was withdrawn and

---

[1] The Class Action Plaintiffs refer to the plaintiffs in the actions captioned *Hill v. JPMorgan Chase & Co.*, 11 Civ. 7961 (CM) (the "Hill Class Action") and *Shapiro v. JPMorgan Chase & Co.*, 11 Civ. 8331 (CM) (the "Shapiro Class Action").

A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Andrew J. Entwistle filed in support of the Class Action Plaintiffs' motion for preliminary approval of the Settlement Agreement. (Hill Class Action, ECF No. 16, Ex. 1.)

the case was transferred to this Court.  On November 1, 2011, this Court granted JPMC's motion to dismiss the Trustee's Common Law Claims and remanded the Avoidance Claims to the Bankruptcy Court for further proceedings.   On June 20, 2013, the Second Circuit affirmed the dismissal of the Trustee's Common Law Claims against JPMC. *Picard v.  JPMorgan Chase & Co. (In re Bernard L. Madoff Investment Securities LLC)*, 721 F.3d 54 (2d Cir. 2013).

**THE CLASS ACTIONS**

Shortly after the Trustee's Common Law Claims were dismissed by this Court, the Hill and Shapiro Class Actions were filed in the District Court.  Both actions asserted common law causes of action against JPMC relating to its involvement with the BLMIS fraud.  The Hill Class Action defined the proposed class as "all persons or entities who, directly, had capital invested with [BLMIS] as of December 12, 2008."  (Hill Compl.  ¶ 59, Hill Class Action, ECF No. 1.)  The Shapiro Class Action defined the class as "all customers who directly had capital invested with BLMIS as of December 12, 2008 and suffered damages."  (Shapiro Compl.  ¶ 2, Shapiro Class Action, ECF No. 1).

On December 5, 2012, the Hill and Shapiro Class Actions were consolidated and, on January 20, 2012, the Consolidated Class Action Complaint was filed.  (2012-12-05 Order ¶ 1, Hill Class Action, ECF No. 3-4.)   The Consolidated Class Action Complaint alleged, *inter alia*, knowing participation in a breach of trust, aiding and abetting embezzlement, aiding and abetting breach of fiduciary duty, conversion, aiding and abetting conversion, unjust enrichment, breach of fiduciary duty, commercial bad faith, and gross negligence against JPMC.  The Consolidated Class Action Complaint defined the class as "all persons or entities who, directly, had capital invested with [BLMIS], as of December 12, 2008."  (Compl. ¶ 289, Hill Class Action, ECF No. 4.)

On March 9, 2012, JPMC filed a motion to dismiss the Consolidated Class Action Complaint arguing that the claims were precluded under the Securities Litigation Uniform Standards Act ("SLUSA").  JPMC's motion to dismiss remains *sub judice*.  On May 23, 2012, the Trustee filed a motion seeking limited intervention pursuant to Fed. R. Civ. P. 24(a)(2), which was granted on October 16, 2012.

On September 26, 2013, this Court placed the Consolidated Class Action on the suspense calendar pending the United States Supreme Court's decision in certain cases concerning the interpretation of SLUSA.

### THE SETTLEMENT AGREEMENT

On January 7, 2014, the Class Action Plaintiffs moved this Court for an order preliminarily approving the Settlement Agreement.  (Hill Class Action, ECF No. 15; JPMC Adversary Proceeding, ECF No. 31.)  The Settlement Agreement limits the settling class to only "BLMIS customers . . .  who directly had capital invested with BLMIS as of [December 11, 2008] and thus, under the net investment method upheld by the United States Court of Appeals for the Second Circuit, had net losses [] as of [December 11, 2008] ("Net Losers")." (Hill Class Action, ECF No. 16, Ex. 1 at 5.)  On January 10, 2014, this Court preliminarily approved the Settlement Agreement and set a March 7, 2014 settlement hearing.  (Compl. ¶ 289, Hill Class Action, ECF No. 17.)

The class definition set forth in the Settlement Agreement is much narrower than the definition of the class contained in the Consolidated Class Action Complaint because it excludes all "net winners" who directly had capital invested in BLMIS as of December 11, 2008.

**PARTIES SHOULD BE BOUND BY THE CLASS DEFINITION SET FORTH IN
THE CONSOLIDATED CLASS ACTION COMPLAINT**

As the Seventh Circuit explained in *Alliance to End Repression v. Rochford*, 565 F.2d 975, 978, n. 6 (7th Cir. 1977), it is crucial to have a clear class definition because "the outcome of a class action suit is *res judicata* as to all unnamed class members." Since the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action[,]" it would be inherently unfair for a class definition set forth in the complaint, on which parties relied to suspend the applicable statute of limitations, to then be so narrowly construed as to exclude those very parties. *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974). Here, anyone reading the class definition would have reasonably assumed that it included net winners. The parties are bound by the class definition as set forth in the Consolidated Class Action Complaint. If that was not the intention, it could have easily been so stated. Thus, the Customers are entitled to opt out and pursue their own litigation against JPMC.

**RELIEF REQUESTED**

Based on the class definition as set forth in the Consolidated Class Action Complaint, the Customers, on behalf of themselves as well as the class of "net winners" that they represent, hereby request exclusion from the Settlement Agreement in the Consolidated Class Action, *Hill v. JPMorgan Chase & Co., et al,* No. 11-cv-7961 (CM); *Shapiro v. JPMorgan Chase & Co., et al.,* No. 11-cv-8331 (CM). The Customers plan to pursue separate claims against JPMC on behalf of all net winners. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).

January 28, 2014

**BECKER & POLIAKOFF LLP**

By: /s/ Helen Davis Chaitman
45 Broadway
New York, NY 10006
(212) 599-3322
HCHAITMAN@BPLEGAL.COM
*Attorneys for the customers listed on*
*Exhibit A and the class of all "net*
*winners"*

**EXHIBIT A**

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 1. | Marsha F. Peshkin<br>1416 Harbour Point Drive<br>North Palm Beach, Florida 33410<br>(561) 691-0229 |
| 2. | Garynn Rodner Cutroneo<br>63 Brook Farm Road<br>Bedford, NY 10506<br>(914) 234-3993 |
| 3. | Angela Tiletnick<br>217-14 43rd Avenue<br>Bayside, NY  11361<br>(718) 206-7817 |
| 4. | Herbert Barbanel and Alice Barbanel<br>1024 Broadway<br>Woodmere, NY 11598<br>(516) 374-2888 |
| 5. | Barbara Roth as Executrix of the Estate of Mark William Roth<br>5737 East Everett Drive<br>Scottsdale, Arizona 85254<br>(602) 650-2012 |
| 6. | David Shapiro Nominee and David Shapiro Individually<br>555 Green Place<br>Woodmere, NY  11598<br>(516) 374-1154 |
| 7. | David Shapiro Nominee 2 and David Shapiro, Individually<br>555 Green Place<br>Woodmere, NY  11598<br>(516) 374-1154 |
| 8. | David Shapiro Nominee 3 and David Shapiro<br>555 Green Place<br>Woodmere, NY  11598<br>(516) 374-1154 |
| 9. | David Shapiro Nominee 4 and David Shapiro Individually<br>555 Green Place<br>Woodmere, NY  11598<br>(516) 374-1154 |
| 10. | Roberta Schwartz Trust U/A/D 2/11/08<br>Roberta Schwartz<br>5110 Longsun Lane<br>P.O. Box 1120<br>Avon, CO  81620<br>(970) 845-0481 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 11. | Alexander Sirotkin<br>1817 Country Lane<br>Durham, NC 27713<br>(919) 973-0940 |
| 12. | RAR Entrepreneurial Fund, LTD.<br>4840 SW 80 Street<br>Miami, FL 33143-6142<br>(305) 667-6800 |
| 13. | Russell Oasis<br>4840 SW 80 Street<br>Miami, FL 33143-6142<br>(305) 667-6800 |
| 14. | Sage Associates<br>c/o Malcolm H. Sage<br>45 Christopher Street, Apt. 14B<br>New York, NY 10014<br>(212) 986-0101 |
| 15. | Sage Realty<br>Malcom H. Sage<br>45 Christopher Street, Apt. 14B<br>New York, NY 10014<br>(212) 986-0101 |
| 16. | Benjamin T. Heller<br>14 Weber Road<br>Sharon CT 06069<br>(860) 364-1225 |
| 17. | Robert Yaffe<br>30 Jericho Executive Plaza, 300 C<br>Jericho, NY  11753<br>(631) 421-1000 |
| 18. | Triangle Properties #39<br>c/o Robert Yaffe<br>30 Jericho Executive Plaza, 300 C<br>Jericho, NY  11753<br>(631) 421-1000 |
| 19. | Bevro Realty Corp. Defined Benefit Pension Plan<br>c/o Robert Yaffe<br>30 Jericho Executive Plaza, 300 C<br>Jericho, NY  11753<br>(631) 421-1000 |
| 20. | David Abel<br>30 Jericho Executive Plaza, 300 C<br>Jericho, NY  11753<br>(631) 421-1000 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 21. | Realty Negotiators Defined Benefit Pension Plan<br>c/o David Abel<br>30 Jericho Executive Plaza, 300 C<br>Jericho, NY  11753<br>(631) 421-1000 |
| 22. | Yesod Fund, A Trust<br>c/o Neal J. Howard<br>Glenmede Trust Co.<br>1201 N. Market Street, Suite 1501<br>Wilmington, DE  19801-1163<br>(302) 661-4559 |
| 23. | N. Highmark LLC<br>c/o Neal J. Howard<br>Glenmede Trust Co.<br>1201 N. Market Street, Suite 1501<br>Wilmington, DE  19801-1163<br>(302) 661-4559 |
| 24. | Fern C. Palmer Revocable Trust Dtd 12/31/91 as Amended<br>c/o Fern Palmer<br>100 Clydesdale Trail, Apt. 220<br>Medina, MN 55340-5421<br>(763) 559-9321 |
| 25. | Boyer Palmer (deceased)<br>c/o Fern Palmer<br>100 Clydesdale Trail, Apt. 220<br>Medina, MN 55340-5421<br>(763) 559-9321 |
| 26. | Boyer Palmer (deceased) and Fern Palmer<br>c/o Fern Palmer<br>100 Clydesdale Trail, Apt. 220<br>Medina, MN 55340-5421<br>(763) 559-9321 |
| 27. | Palmer Family Trust<br>c/o Gregory K. Blow<br>Senior Vice President<br>Trust Department Manager<br>Great Western Bank<br>14 St. Joseph Street<br>Rapid City, SD  57709<br>(888) 620-2265 |
| 28. | Manuel O. Jaffe<br>785 Crandon Blvd., Unite 1506<br>Key Biscayne, FL  33149<br>(612) 455-0712 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 29. | Allen Meisels<br>785 Crandon Blvd., Unite 1506<br>Key Biscayne, FL  33149<br>(973) 921-0784 |
| 30. | Trust U/W/O Morris Weintraub FBO Audrey Weintraub<br>c/o Robert Weintraub<br>PO Box S<br>Waldoboro, ME 04572<br>(207) 350-5306 |
| 31. | Estate of Seymour Epstein,<br>c/o Tammy Yuen<br>31 Pierrepont St.<br>Brooklyn, NY 11201<br>(212) 880-9595 |
| 32. | Shelburne Shirt Company<br>c/o Tammy Yuen<br>31 Pierrepont St.<br>Brooklyn, NY 11201<br>(212) 880-9595 |
| 33. | Walter B. Kissinger Trsutee W. B. Kissinger Revocable Trust 10/23/96<br>c/o WBK Associates<br>200 Broad Hollow Road, Suite 402<br>Melville, NY 11747<br>(631) 351-8864 |
| 34. | Walter Kissinger Eugenie Kissinger Trust U/A/D 12/6/99<br>c/o WBK Associates<br>200 Broad Hollow Road, Suite 402<br>Melville, NY 11747<br>(631) 351-8864 |
| 35. | David R. Kamenstein & Carol Kamenstein J/T WROS<br>1314 Breakers West Blvd.<br>West Palm Beach, FL 33411<br>(561) 762-5515 |
| 36. | David Kamenstein<br>1314 Breakers West Blvd.<br>West Palm Beach, FL 33411<br>(561) 762-5515 |
| 37. | Carol Kamenstein<br>1314 Breakers West Blvd.<br>West Palm Beach, FL 33411<br>(561) 762-5515 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 38. | Tracy Kamenstein Markin<br>70 Blossom Way<br>Palm Beach, FL 33480<br>(561) 310-7343 |
| 39. | Sloan G. Kamenstein<br>350 S. Ocean Blvd., Apt. 307<br>Palm Beach, FL 33480<br>(561) 373-2330 |
| 40. | Judith Rechler<br>c/o Rechler Equity LLC<br>85 South Service Rd<br>Plainview, NY 11803<br>(631) 414-8405 |
| 41. | Donald Rechler<br>c/o Rechler Equity LLC<br>85 South Service Rd<br>Plainview, NY 11803<br>(631) 414-8405 |
| 42. | Roger Rechler Revocable Trust<br>c/o Dennis Sprung<br>Executor of the Estate of Roger Rechler<br>260 Madison Avenue<br>New York, NY 10016<br>(212) 696-8327 |
| 43. | Evelyn Rechler<br>c/o Rechler Equity LLC<br>5 South Service Rd<br>Plainview, NY 11803<br>(631) 414-8448 |
| 44. | Todd Rechler<br>c/o Rechler Equity LLC<br>5 South Service Rd<br>Plainview, NY 11803<br>(631) 414-8448 |
| 45. | Gregg Rechler<br>c/o Rechler Equity LLC<br>5 South Service Rd<br>Plainview, NY 11803<br>(631) 414-8448 |
| 46. | Scott Rechler<br>RXR Realty LLC<br>625 RXR Plaza<br>Uniondale, NY 11556<br>(516) 506-6555 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 47. | Estate of Audrey Weintraub<br>c/o Robert Weintraub<br>PO Box S<br>Waldoboro, ME 04572<br>(207) 350-5306 |
| 48. | Marlene Krauss<br>c/o KBL Healthcare<br>52 East 72nd Street<br>New York, NY 10021<br>(212) 319-5555 |
| 49. | Elaine Dine Living Trust Dated 5/12/06<br>Elaine Dine<br>760 San Ysidro Road<br>Santa Barbara Ca. 93108<br>(805) 969-2403 |
| 50. | Judd Robbins<br>2305-C Ashland Street #437<br>Ashland, OR 97520<br>(541) 512-2508 |
| 51. | Gerald E. Keller Trustee Gerald E. Keller Sep Property, The Gerald and Barbara Keller Family Trust<br>c/o Keller Intl. Publishing Corp.<br>150 Main Street<br>Port Washington, NY 11050<br>(760) 321-0640 |
| 52. | Felice J. Perlman and Sanford S. Perlman TIC<br>Felice Perlman<br>285 Riverside Dr.<br>New York, NY 10025<br>(212) 666 9887<br>and<br>Sanford Perlman<br>251 Harvard St.<br>East Williston, NY 11596<br>(516) 741 7616 |
| 53. | Jerome Goodman,<br>c/o Kevin Goodman<br>59 Valley View Road<br>Great Neck, NY 11021<br>(516) 487-3690 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 54. | Jerome Goodman Capital Partners L.P.<br>c/o Kevin Goodman<br>59 Valley View Road<br>Great Neck, NY 11021<br>(516) 487-3690 |
| 55. | The Jerome Goodman Children's Grat #1<br>c/o Kevin Goodman<br>59 Valley View Road<br>Great Neck, NY 11021<br>(516) 487-3690 |
| 56. | Robert F. Ferber<br>1807 Circle Road<br>Ruxton, MD. 21204<br>(443) 278-5993 |
| 57. | Jacob M. Dick Rev Living Trust Dated 4/6/01 and June Dick TIC<br>c/o Andrea Joy Marks<br>196 Ocean Avenue<br>Woodmere, NY 11598<br>(516) 374-7624<br>and<br>Jacob M. Dick, deceased<br>c/o Suzanne and Rio Breen<br>2673 NW 64th Blvd.<br>Boca Raton, FL 33496<br>(561) 218-4930 |
| 58. | Jacob M. Dick Rev Living TST DTD 4/6/01 Dr. Jacob Dick C/O AJ Marks<br>c/o Andrea Joy Marks196<br>Ocean Avenue<br>Woodmere, NY 11598<br>(516) 374-7624<br>and<br>Jacob M. Dick, deceased<br>c/o Suzanne and Rio Breen<br>2673 NW 64th Blvd.<br>Boca Raton, FL 33496<br>(561) 218-4930 |
| 59. | Alvin E. Shulman<br>19333 W. Country Club Drive, #722<br>Aventura, FL  33180<br>(305) 792-0556 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 60. | FAS Partnership LP<br>c/o Alvin E. Shulman<br>19333 W. Country Club Drive, #722<br>Aventura, FL  33180<br>(305) 792-0556 |
| 61. | Florence W. Shulman (deceased)<br>c/o Alvin E. Shulman<br>19333 W. Country Club Drive, #722<br>Aventura, FL  33180<br>(305) 792-0556 |
| 62. | Florence Shulman Pourover TST Florence W. Shulman (deceased)<br>c/o Alvin E. Shulman<br>19333 W. Country Club Drive, #722<br>Aventura, FL  33180<br>(305) 792-0556 |
| 63. | Alvin E. Shulman Pourover Trust<br>c/o Alvin E. Shulman<br>19333 W. Country Club Drive, #722<br>Aventura, FL  33180<br>(305) 792-0556 |
| 64. | The Whitman Partnership<br>Judith Whitman Revocable Living Trust U/A/D 8/5/86<br>The Bernard Whitman Revocable Living Trust U/A/D 8/5/86<br>c/o Bernard & Judith Whitman<br>5610 Country Club Way<br>Sarasota, FL  34243<br>(941) 351-8324 |
| 65. | Donald A. Benjamin<br>152 Darters Lane<br>Manhasset, NY  11030<br>(516) 484-2779 |
| 66. | Richard S. Poland<br>534 Spruce Street<br>Aspen, CO 81611<br>(970) 920-3056 |
| 67. | Russell L. Dusek<br>1840 Les Chateaux Blvd. # 104<br>Pelican Marsh<br>Naples, Florida 34109<br>(230) 653-9178 |
| 68. | Peter D. Kamenstein<br>PO Box 304<br>North Salem NY 10560<br>(914) 954 6584 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 69. | P.B. Robco, Inc.<br>c/o Phillip Robinson<br>Centre de Ski Mont Blanc<br>1006, route 117, Saint-Faustin-Lac-Carré<br>(Québec) Canada J0T 1J3<br>(800) 567-6715 |
| 70. | David Gross and Irma Gross J/T WROS<br>7248 Ballantrae Court<br>Boca Raton, FL 334986-1422<br>(561) 483-4543 |
| 71. | David Gross<br>7248 Ballantrae Court<br>Boca Raton, FL 334986-1422<br>(561) 483-4543 |
| 72. | Timothy Shawn Teufel and Valerie Ann Teufel, Co-Trustees of the Teufel Family Trust<br>U/T/D 5/24/95<br>c/o Timothy Teufel<br>18600 SE River Ridge Road<br>Tequesta, FL 33469<br>(561) 352-1078 |
| 73. | Timothy Tuefel<br>18600 SE River Ridge Road<br>Tequesta, FL 33469<br>(561) 352-1078 |
| 74. | Chalek Associates LLC<br>c/o Morton Chalek<br>30 West 60th St. Apt.7C<br>NY, NY  10023<br>(646) 781-9075 |
| 75. | James M. Garten<br>640 Grant Road<br>North Salem, NY 10560<br>(914) 242-7094 |
| 76. | Clothmasters, Inc.<br>c/o James New<br>264 Atlantic Avenue<br>Swampscott, MA 01907<br>(781) 595-7044 |
| 77. | Dara N. Simons<br>P.O. Box 209<br>Treadwell, NY  13846<br>(607) 829-2712 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 78. | The Jordan H. Kart Revocable Trust<br>c/o Jon J. Kart<br>44 Old Brooklyn Ct.<br>Richmond, VT 05477<br>(800) 999-7515 |
| 79. | Bruno L. DiGiulian<br>12045 NW 62nd Court<br>Coral Springs, FL 33076<br>(954) 796-8350 |
| 80. | J.Z. Personal Trust, Estate of Jerome M. Zimmerman<br>Zimmerman Walker & Monitz, LLP<br>Calabasas Park Centre<br>23975 Park Sorrento, Suite 210<br>Calabasas, CA 91302-4011<br>(818) 222-9889 |
| 81. | Robert Hirsch and Lee Hirsch<br>492 County Road<br>Becket, MA 01223<br>(413) 623-5674 |
| 82. | Mark Horowitz<br>13223 Dusty Grove Lane<br>Sugar Land, Texas 77498<br>(281) 277-0439 |
| 83. | Philip F. Palmedo<br>4 Piper Lane<br>Saint James, NY 11780<br>(631) 584-8945 |
| 84. | Samdia Family L.P.<br>c/o Andrew J. Messing<br>President<br>Larson Camouflage, LLC<br>1501 South Euclid Avenue<br>Tucson, Arizona 85713<br>(520) 294-3900 |
| 85. | Kuntzman Family LLC.<br>c/o Judith Gattegno<br>29 Sussex Road<br>Tenafly, NJ 07670<br>(201) 567-3843<br>and<br>Wayne & Jacqueline Green<br>29C Westgate Lane<br>Boynton Beach, FL 33436<br>(954) 354-1130 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 86. | Carla Ginsburg<br>21 Chestnut Street<br>Weston, MA  02493<br>(781) 799-3690 |
| 87. | Estate of James M. Goodman<br>Audrey M. Goodman, as Personal representative of the Estate of James M. Goodman<br>c/o Murray Hill Properties<br>277 Park Avenue, 21st Floor<br>New York, NY 10172<br>(212) 763-3572 |
| 88. | Andrew M. Goodman<br>c/o Murray Hill Properties<br>277 Park Avenue, 21st Floor<br>New York, NY 10172<br>(212) 763-3572 |
| 89. | Placon2<br>c/o Ted Cohen<br>118 Banyan Isle Drive<br>Palm Beach Gardens, FL 33418<br>(561) 630-7541<br>and<br>Robert A. Plafsky, Esq.<br>750 Southeast Third Avenue, Suite 100<br>Fort Lauderdale, FL  33316<br>(954) 767-0107 |
| 90. | Estate of Irene Schwartz<br>c/o Lois Zenkel, Executrix<br>46 Burying Hill Road<br>Greenwich, CT  06831<br>(212) 333-5730 |
| 91. | Edwin Michalove<br>809 S. Bundy Drive<br>Los Angeles, CA  90049<br>(310) 820-1803 |
| 92. | The Estelle Harwood Family Limited Partnership<br>Estelle Harwood Revocable Trust<br>Estelle Harwood<br>19 Schindler Way<br>Fairfield, NJ  07004<br>(973) 618-9115 |
| 93. | Kenneth M. Kohl and Myrna L. Kohl<br>13900 Marquesas Way, Apt 4423<br>Marina del Rey, CA 90292<br>(310) 823-2727 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 94. | Shari Block Jason<br>11 Eagle Chase<br>Woodbury, NY 11797<br>(516) 364-2740 |
| 95. | Toby Harwood<br>175 Longhill Drive<br>Short Hill, NJ 07078<br>(973) 376-0367 |
| 96. | Frank Difazio and Carol Difazio<br>81 St. Marks Lane<br>Islip, NY 11751<br>(631) 666-8808 |
| 97. | Stephen Ehrlich and Leslie Ehrlich<br>48 East 91st Street<br>New York, NY 10128<br>(212) 427-5554 |
| 98. | Fernando C. Colon-Osorio, M.D. and Laurie Ann Margolies JT WROS<br>Fernando C. Colon-Osorio<br>420 Lakeside Avenue,<br>Marlborough, MA 01752<br>(508) 490-7600 |
| 99. | Laurie Ann Margolies Children's Trust DTD 11/1/08<br>c/o Laurie Ann Margolies<br>420 Lakeside Avenue,<br>Marlborough, MA 01752<br>(508) 490-7600 |
| 100. | Bert Margolies Trust<br>c/o Ralph H. Cohen and Nancy Dver-Cohen<br>3455 Byron Lane<br>Longboat Key, FL 34228<br>(941) 387-1455 |
| 101. | Barbara June Lang & Estate of Steven Harnick<br>c/o Barbara June Lang<br>3170 Jefferson Avenue<br>Coconut Grove, FL 33133<br>(305) 665-2737 |
| 102. | Martin Harnick and Stephen Norton Partners<br>c/o Martin Harnick<br>340 Sunset Drive # 1411<br>Fort Lauderdale, FL 33301<br>(845) 679-6553 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 103. | Sylvia Brodsky, deceased<br>c/o Martin Harnick<br>340 Sunset Drive #1411<br>Fort Lauderdale FL 33301<br>(845) 679-6553 |
| 104. | Harnick Brothers Partners<br>c/o Steven P. Norton<br>340 Sunset Drive #1411<br>Fort Lauderdale FL 33301<br>(845) 679-6553 |
| 105. | Marie S. Rautenberg<br>c/o Andrew M. Seid<br>Peyser & Alexander Management, Inc.<br>500 Fifth Avenue, Suite 2700<br>New York , NY 10110<br>(212) 921-4249 |
| 106. | Lisa Beth Nissenbaum Trust<br>c/o Lisa Nissenbaum<br>14691 NW 160th Ave.<br>Williston, FL 32696<br>(602) 770-5570 |
| 107. | Stephanie Andelman Steven Andelman J/T WROS<br>10 White Birch Lane<br>P.O. Box 1044<br>Glen, NH 03838<br>(508) 728-0708 |
| 108. | Steven J. Andelman<br>10 White Birch Lane<br>P.O. Box 1044<br>Glen, NH 03838<br>(508) 728-0708 |
| 109. | Robert Roman<br>2444 N.W. 59th Street, #1301<br>Boca Raton, FL 33496<br>(561) 988-1760 |
| 110. | Joan Roman<br>2444 N.W. 59th Street, #1301<br>Boca Raton, FL 33496<br>(561) 988-1760 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 111. | Train Klan, a Partnership<br>c/o Felice T. Londa Esq.<br>Londa & Londa, Eqs.<br>277 North Broad Street<br>Elizabeth, NJ  07208<br>(908) 353-5600 |
| 112. | Harry Smith Revocable Living Trust<br>c/o Laura Ann Smith, as Trustee<br>3837 Camino Real<br>Sarasota, FL 34239<br>(941) 350-8077 |
| 113. | Laura Ann Smith Revocable Living Trust<br>c/o Laura Ann Smith<br>3837 Camino Real<br>Sarasota, FL 34239<br>(941) 350-8077 |
| 114. | Allen Gordon IRA<br>Edyne Gordon, executrix of the Estate of Allen Gordon<br>P.O. Box 517<br>Tesuque, NM 87574<br>(505) 216-1115 |
| 115. | Allen Gordon<br>Edyne Gordon, executrix of the Estate of Allen Gordon<br>P.O. Box 517<br>Tesuque, NM 87574<br>(505) 216-1115 |
| 116. | Susan R. Andelman<br>2585 Jupiter Way<br>The Villages, FL 32163-6334<br>(508) 728-0708 |
| 117. | Glenhaven Limited<br>c/o Mathew L. Gladstein<br>85 Morris Lane<br>Scarsdale, NY  10583<br>(646) 840-1672 |
| 118. | Denis M. Castelli<br>22 Starr Lea Road<br>North Salem, NY 10560<br>(845) 803-2863 |
| 119. | Sylvan Associates LP<br>c/o Donald R. Shapiro, General Partner<br>39 Sylvan Lane<br>Weston, MA 02493<br>(781) 235-0404 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 120. | James M. New Trust Dtd 3/19/01, James & Irene New, Trustees<br>264 Atlantic Avenue<br>Swampscott, MA  01907<br>(781) 595-7044 |
| 121. | Irene Whitman 1990 Trust, James New Trustee<br>264 Atlantic Avenue<br>Swampscott, MA 01907<br>and<br>Robert S. Whitman<br>3726 Biggin Church Rd. W.<br>Jacksonville, FL 32224<br>(904) 821-9041 |
| 122. | Robert S. Whitman<br>3726 Biggin Church Rd. W.<br>Jacksonville, FL 32224<br>(904) 821-9041 |
| 123. | Melvin H. and Leona Gale as Trustees<br>17630 Bocaire Way<br>Boca Raton, FL  33487-1108<br>(561) 241-0093 |
| 124. | Evelyn Berezin Wilenitz as Trustee under Trust u/art fourth o/w/o Israel Wilenitz,<br>136 Waverly Place, Apt. 16 C<br>NYC, NY 10014<br>(212) 675-5257 |
| 125. | Evelyn Berezin Wilenitz<br>136 Waverly Place, Apt. 16 C<br>NYC, NY 10014<br>(212) 675-5257 |
| 126. | Frieda Freshman Trustee, Walter Freshman Trust A<br>4052 Bocaire Boulevard<br>Boca Raton , FL  33487-1146<br>(561) 994-2495 |
| 127. | Frieda Freshman Trustee<br>Frieda Freshman Revocable Trust<br>4052 Bocaire Boulevard<br>Boca Raton , FL  33487-1146<br>(561) 994-2495 |
| 128. | Audrey Lefkowitz<br>314 Demott Avenue<br>Rockville centre New York 11570 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 129. | Anita Kirsten as Executrix of the Estate of Marvin Kirsten, c/o Michele Rosenberg, CPA Cornick Garber Sandler 825 Third Avenue New York, NY  10022 (212) 557-3900 |
| 130. | Robert Savin c/o Barbara L. Savin 11755 Elina Court Palm Beach Gardens, FL  33418 (914) 305-5943 |
| 131. | Barbara L. Savin 11755 Elina Court Palm Beach Gardens, FL  33418 (914) 305-5943 |
| 132. | Marilyn Turk Revocable Trust; Andrea Kringstein as Trustee 401 East 60th Street, Apt. 29C New York, NY 10022 (212) 570-2436 And Jeffrey A. Turk as Trustee 9800 Adlie Drive Wake Forest, NC 27587 (919) 554-3899 |
| 133. | The Celeste & Adam Bartos Charitable Trust and Adam P. Bartos c/o Neal J. Howard Glenmede Trust Co. 1201 N. Market Street, Suite 1501 Wilmington, DE  19801-1163 (302) 661-4559 |
| 134. | Robert Benjamin, deceased by Carolyn Jean Benjamin, Executrix 10768 Trego Trail Raleigh, N.C.  27614 (919) 844-2004 and Penny Pesaturo 11 Long Hill Road Rowley, MA 01969 (978) 948-8166 and Robin Durr 55 Wisteria Way Basking Ridge, NJ 07920 (908) 647-1995 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 135. | The Gloria Albert Sandler and Maurice Sandler Revocable Living Trust<br>c/o Maurice Sandler<br>115 Post Road<br>Alamo, CA 94507<br>(925) 913-2440 |
| 136. | Robert C. Luker Family Partnership<br>c/o Robert Luker<br>1019 E. St. James Street<br>Arlington Heights, IL  60004-6310<br>(847) 253-0847 |
| 137. | Stony Brook Foundation, Inc.<br>c/o Leonard Spivak<br>P.O. Box 1511<br>Stony Brook, NY 11790<br>(914) 472-9715 |
| 138. | Leonard J. Oguss, Trustee<br>c/o/  Ronald A. Oguss<br>Ronald A. Oguss<br>23805 Terrace View Dr.<br>Newhall, CA 91321<br>(847) 630-1324<br>and<br>Gerald M. Oguss<br>1685 Wincanton Lane<br>Highland Park, IL  60035<br>(312) 636-7007 |
| 139. | Theresa R. Ryan<br>217 Shearwater Isle<br>Foster City, CA  94404<br>(415) 606-4194 |
| 140. | Atwood Management Profit Sharing Plan & Trust/Atwood Regency Money Purchase Pension Plan<br>c/o Sandra Guiducci<br>136-89 41st Avenue<br>Flushing, NY 11355<br>(718) 445-7434 |
| 141. | Atwood Management Profit Sharing Plan & Trust/Atwood Regency Defined Benefit Plan & Trust<br>c/o Sandra Guiducci<br>136-89 41st Avenue<br>Flushing, NY 11355<br>(718) 445-7434 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 142. | Mary Guiducci<br>c/o Sandra Guiducci<br>136-89 41st Avenue<br>Flushing, NY 11355<br>(718) 445-7434 |
| 143. | Guiducci Family LP<br>c/o Sandra Guiducci<br>136-89 41st Avenue<br>Flushing, NY 11355<br>(718) 445-7434 |
| 144. | JABA Associates LP<br>c/o Murray Hill Properties<br>277 Park Avenue, 21st Floor<br>New York, NY 10172<br>(212) 763-3572 |
| 145. | James Goodman deceased and Audrey Goodman<br>c/o Murray Hill Properties<br>277 Park Avenue, 21st Floor<br>New York, NY 10172<br>(212) 763-3572 |
| 146. | Mark Rechler<br>1434 Ridge Road<br>Laurel Hollow, NY 11791<br>(516) 692-8484 |
| 147. | Trust FBO Mark Rechler<br>1434 Ridge Road<br>Laurel Hollow, NY 11791<br>(516) 692-8484 |
| 148. | Todd Rechler<br>c/o Rechler Equity LLC<br>85 South Service Road<br>Plainview NY 11803<br>(631) 4141-8405 |
| 149. | Trust FBO Todd Rechler<br>c/o Rechler Equity LLC<br>85 South Service Road<br>Plainview NY 11803<br>(631) 4141-8405 |
| 150. | Mitchell Rechler<br>225 Broadhollow Road<br>Melville, NY 11747<br>(631) 414-8485 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 151. | Trust FBO Mitchell Rechler<br>225 Broadhollow Road<br>Melville, NY 11747<br>(631) 414-8485 |
| 152. | Glenn Rechler<br>c/o Rechler Equities<br>85 South Service Road<br>Plainview NY 11803<br>(631) 414-8405 |
| 153. | Trust FBO Glenn Rechler<br>c/o Rechler Equities<br>85 South Service Road<br>Plainview NY 11803<br>(631) 414-8405 |
| 154. | Scott Rechler<br>RXR Realty LLC<br>625 RXR Plaza<br>Uniondale, NY 11556<br>(516) 506-6555 |
| 155. | Trust FBO Scott Rechler<br>RXR Realty LLC<br>625 RXR Plaza<br>Uniondale, NY 11556<br>(516) 506-6555 |
| 156. | Donald and Judith Rechler<br>c/o Rechler Equities<br>85 South Service Road<br>Plainview NY 11803<br>(631) 414-8405 |
| 157. | Reckson Generation<br>c/o Rechler Equity LLC<br>85 South Service Rd<br>Plainview, NY 11803<br>(631) 414-8405 |
| 158. | Bert Brodsky Associates, Inc. Pension Plan<br>c/o Bert Brodsky<br>26 Harbor Park Drive<br>Port Washington, NY 11050<br>(516) 484-4400 |
| 159. | Plafsky Family LLC Retirement Plan<br>c/o Robert A. Plafsky, Esq.<br>750 Southeast Third Avenue, Suite 100<br>Fort Lauderdale, FL  33316<br>(954) 767-0107 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 160. | Blue Bell Lumber and Moulding Company, Inc. Profit Sharing Plan<br>c/o Howard M. Schupak<br>13 Bonnie Briar Road<br>Yonkers, NY  10710-4601<br>(914) 779-7303 |
| 161. | The Lazarus-Schy Family Partnership<br>c/o Terry Lazarus<br>Guilford E. #3073<br>Boca Raton, FL  33434<br>(954) 255-8686<br>and<br>Ronald and Linda Lazarus<br>7047 Prado Lake Dr<br>Delray Beach,FL 33446<br>(561) 865-2303 |
| 162. | The Schy Family Partnership<br>c/o Terry Lazarus<br>Guilford E. #3073<br>Boca Raton, FL  33434<br>(954) 255-8686<br>and<br>Ronald and Linda Lazarus<br>7047 Prado Lake Dr<br>Delray Beach,FL 33446<br>(561) 865-2303 |
| 163. | Irene Whitman 1990 Trust U/A DTD 4/13/90<br>c/o James New<br>264 Atlantic Avenue<br>Swampscott, MA  0190<br>(781) 595-7044 |
| 164. | Edward I. Speer and Marion Speer<br>17930 Deauville Lane<br>Boca Raton, FL 33496<br>(561) 982-2970 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 165. | Ryan Tavlin Trust UA 10/31/96<br>c/o Doron Tavlin<br>2232 W. Lake of the Isles Pkwy.<br>Minneapolis, MN 55405<br>(612) 581-8448<br>and<br>Ryan E. Tavlin<br>7280 Hillside DR<br>Apt 209<br>Los Angeles CA 90046<br>(917) 853-5418 |
| 166. | Richard G. Eaton, MD<br>6 Greens Way<br>New Rochelle, NY 10805<br>and<br>c/o Holly R. Eaton, Esq.<br>POA for Richard G. Eaton<br>609 Mississippi Ave<br>Silver Spring, MD 20910<br>(240) 533-6356 |
| 167. | Gunther K. Unflat and Margaret Unflat<br>157 Whelan Willie Way<br>Hawley, PA  18428-9805<br>(570) 685-7878 |
| 168. | Keith Schaffer, Jeffrey Schaffer, and Carla Hirschhorn<br>393 Peter Forman Drive<br>Freehold, NJ  07728<br>(646) 752-5124 |
| 169. | Carla Hirschhorn and Stanley Hirschorn<br>8 Woodcrest Terrace<br>Manalapan, NJ 07726 |
| 170. | Keith Schaffer<br>c/o Jeffrey Schaffer<br>393 Peter Forman Drive<br>Freehold, NJ 07728 |
| 171. | Jeffrey and Donna Schaffer<br>393 Peter Forman Drive<br>Freehold, NY 07728<br>(646) 752-5124 |
| 172. | Brad Wechsler<br>800 Park Avenue, 12th Floor<br>New York, NY 10021<br>(212) 821-0133 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|---|---|
| 173. | Doron Tavlin Trust U/A 2/4/91<br>c/o Doron Tavlin<br>2232 W. Lake of the Isles Pkwy.<br>Minneapolis, MN 55405<br>(612) 581-8448 |
| 174. | The Estate of Nathan Schupak<br>c/o Howard Schupak<br>13 Bonnie Briar Road<br>Yonkers, New York 10710-4601<br>(914) 522-8261 |
| 175. | Frieda Low<br>11217 Orange Hibiscus Lane<br>Palm Beach Gardens, Florida 33418<br>(561) 625-1096 |
| 176. | Robert K. Low<br>11217 Orange Hibiscus Lane<br>Palm Beach Gardens, Florida 33418<br>(561) 625-1096 |
| 177. | The Mishkin Family Trust<br>c/o Ellen Mishkin<br>2575 Palisade Avenue #4L<br>Bronx, NY 10463<br>(718) 884-9510 |
| 178. | William J. Cohen, Trustee, deceased<br>c/o Ted Cohen<br>35 Hillside Ave<br>Hillside NJ 07205<br>(973) 926-2300 |
| 179. | William Pressman Inc.<br>c/o William Pressman<br>5907 Caribbean Pine Circle<br>Tamarac, Florida 33319-3014<br>(954) 735-7552 |
| 180. | William Pressman Rollover<br>5907 Caribbean Pine Circle<br>Tamarac, Florida 33319-3014<br>(954) 735-7552 |
| 181. | Radosh Partners<br>c/o Burnett H. Radosh<br>2533 NE 26 Avenue<br>Lighthouse Point, FL 33064<br>(954) 781-1228 |

| | Parties Represented by Becker & Poliakoff, LLP who are opting out |
|---|---|
| 182. | Morris Talansky<br>1 Meadow Drive  Apt. 1J<br>Woodmere N.Y. 11598<br>(347) 486-0748 |
| 183. | Hendler & Gersten LLC<br>c/o Beth Gersten<br>108 Whisper Way E<br>Ledgewood, NJ 07852 |
| 184. | Hendler & Gersten LLC<br>c/o Gloria Hendler & Beth Gersten<br>108 Whisper Way E<br>Ledgewood, NJ 07852 |
| 185. | Shirley Friedman (deceased)<br>c/o Richard Friedman<br>Richard Friedman<br>24 Maple Run Drive<br>Jericho, NY  11753<br>(973) 325-0454 |
| 186. | Gabriel Friedman & Shirley Friedman (deceased) TIC<br>c/o Richard Friedman<br>Richard Friedman<br>24 Maple Run Drive<br>Jericho, NY  11753<br>(973) 325-0454 |
| 187. | Mark S. Feldman<br>3020 NW 125th Avenue, Apt 314<br>Sunrise, FL. 33323<br>(954) 474-5141 |
| 188. | Beth P. Feldman as Trustee Dated 11/15/82 FBO Beth P. Feldman<br>3020 NW 125th Avenue, Apt 314<br>Sunrise, FL. 33323<br>(954) 474-5141 |
| 189. | Annette Jungreis and Irving Jungreis Trustees Annette Jungreis Trust 5/13/93<br>21193A Clubside Drive<br>Boca Raton, FL 33434 |
| 190. | Sandy Sandler<br>2505 Anthem Village Dr., #E-450<br>Henderson, NV 89052 |
| 191. | North Shore Child & Family Guidance Association, Inc.<br>c/o Andrew Malekoff<br>480 Old Westbury Road<br>Roslyn Heights, NY  11577<br>(516) 626-1971 |

| | **Parties Represented by Becker & Poliakoff, LLP who are opting out** |
|------|----------------------------------------------------------------------|
| 192. | The Allen Family Trust Dated 11/30/89<br>c/o Paul & Laurel Allen<br>400 Deer Valley Road, #3R,<br>San Rafael, Ca. 94903<br>(415) 785-7099 |
| 193. | Paul Allen<br>400 Deer Valley Road, #3R,<br>San Rafael, Ca. 94903<br>(415) 785-7099 |

Exhibit G

**EXHIBIT G**

| Account | Net Equity | Claim Filed in SIPA Proceeding | Complaint Filed in SIPA Proceeding | Default Judgment Debtor in SIPA Proceeding |
|---|---|---|---|---|
| 1 | $1,276,748,854.72 | No | Yes | Yes |
| 2 | $7,500,000.00 | Yes | No | No |
| 3 | $586,717.37 | Yes | No | No |
| 4 | $575,000.00 | Yes | No | No |
| 5 | $406,521.39 | Yes | No | No |
| 6 | $176,354.66 | Yes | No | No |
| 7 | $135,000.00 | Yes | No | No |
| 8 | $55,000.00 | Yes | No | No |
| 9 | $6,000.00 | Yes | No | No |